[No. A039868. First Dist., Div. Five. Aug. 11, 1989.]

In re the Marriage of CAROLINE ANN and JAMES PAUL GREEN.
JAMES PAUL GREEN, Appellant, v.
CAROLINE ANN GREEN, Respondent.

18

**COUNSEL**

James Paul Green, in pro. per., and Frances L. Hancock for Appellant.

Bernard N. Wolf, Dowgialo & Wolf and David P. Uccelli for Respondent.

**OPINION**

**KING, J.**—In this case we hold that in marital dissolution proceedings (1) the proper date for valuation of the community interest in a spouse's law practice is normally the date of separation; (2) failure to request a statement of decision is fatal to a challenge on appeal of the exercise of the trial court's discretion in refusing to allow full credit to a spouse for payment of community obligations from postseparation separate property earnings, where the court allows some credits but refuses others finding them related to the payor's support obligation; (3) Code of Civil Procedure section 998's provision for a statutory offer to compromise is inapplicable to proceedings under the Family Law Act; (4) once mandatory mediation of a custody or visitation dispute has been provided, the court, upon trial of that issue, may deny a party's request for additional mediation, and (5) as a matter of law under the facts of this case, respondent is entitled to an award of attorney fees on appeal pursuant to Civil Code section 4370.5. In addition, we uphold the trial court's imposition of sanctions against appellant pursuant to Code of Civil Procedure section 128.5, subdivision (b)(2)(A).

James Paul Green appeals a judgment of dissolution of marriage raising numerous issues primarily related to property division. We affirm.

James and Caroline Ann Green had been married for eight years when they separated on March 18, 1985. After a hearing on October 17, 1985, the trial court issued an order pendente lite awarding temporary sole physical custody of their three minor children to Caroline. It also ordered James to pay family support of $1,200 per month in addition to making payments as they came due on Caroline's car and the family residence of which Caroline retained exclusive use and possession.

The trial took place between March 24 and April 15, 1987. On April 10, the trial court orally announced its tentative decision as to the valuation of James's law practice. On April 15, also orally, it modified that valuation and announced the rest of its tentative decision. On April 27, while Caroline's attorney was preparing the judgment, he wrote to the trial court pointing out that a computational error resulted in an inconsistency between the court's tentative decision and its figures regarding reimbursement. On June 16, the trial court issued its judgment, explicitly adopting Caroline's calculations.

James's request for a statement of decision (Code Civ. Proc., § 632), filed on June 26, 1987, was denied as untimely.[1] After denying James's new trial motion, the trial court also denied his motion for reconsideration and ordered him to pay attorney fees as sanctions under Code of Civil Procedure section 128.5, subdivision (b)(2)(A).

There is an old adage that a lawyer who represents himself has a fool for a client. Whether that adage applies to James, who has primarily acted as his own attorney at trial and on appeal, we leave to the reader to decide.

## I. *Law Practice.*

The trial court valued James's law practice as of the date of separation "including accounts receivable, work in process, hard assets, supplies, library, lease and leasehold improvements, good will, less liabilities" at $243,612. ■ On appeal James challenges certain components of this evaluation (e.g., goodwill, accounts receivable, hard assets, library, client list, leasehold) which were tentatively announced in open court but not separately set out in the judgment. These claims must fail because James cannot rely on the trial court's oral comments or announcement of intended decision to impeach its judgment. (*In re Marriage of Ditto* (1988) 206 Cal.App.3d 643, 646-649 [253 Cal.Rptr. 770].) "Where, as here, no statement of decision was requested, all intendments will favor the trial court's ruling and it will be presumed on appeal that the trial court found all facts necessary to support the judgment." (*Id.,* at p. 649, fn. omitted.)[2]

■ James disputes the trial court's use of the date of separation to value the community interest in his law practice, contending the value should be fixed as of the date of trial. The selection of the proper date for valuation of community interests in most law partnerships requires a reconciliation between Civil Code sections 4800, subdivision (a) (" . . . the court shall value the assets and liabilities as near as practicable to the time of trial . . .") and 5118 (" . . . earnings . . . of a spouse . . . while separate and apart from the other spouse, are the separate property of the spouse.").[3] ■ With "the enactment of Civil Code section 5118, effective March 4, 1972, any portion of the law practice assets including goodwill which are attributable to the earnings and accumulations of a spouse living separate and apart are the separate property of the spouse earning or accumulating

---

[1] The request was clearly untimely since it was not made 10 days after the court's announcement of intended decision as required by section 632 after a trial of more than 1 day.

[2] Even James's tardy request for a statement of decision was expressly limited to issues other than the law practice evaluation.

[3] All further statutory references are to the Civil Code unless otherwise indicated.

the same." (*In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 110 [113 Cal.Rptr. 58].)

At any given moment the major assets of most law firms are not capital assets, but those related to the direct rendering of professional services, most particularly accounts receivable and work in process. "Many past and present distinguished California lawyers of initial humble and impecunious beginnings will attest to the fact that it is not ordinarily capital investment by a sole legal practitioner which is the chief contributing factor in the realization of income and profits." (38 Cal.App.3d at pp. 106-107.)

■ For this reason we adopt the general rule that in determining the community property interest in law partnerships (including goodwill) in marital dissolution actions, the proper date of valuation is the date of separation of the parties, not a date as near as practicable to the time of trial.

This will not be a general rule without exceptions. However, exceptions will usually be related to situations where the postseparation efforts of the lawyer spouse have minimal impact upon any increase in the value of the law partnership interest. For example, a partnership interest in a large law firm (or shareholder interest in a large professional corporation) may be so relatively small that the lawyer spouse's postseparation efforts cannot be considered a significant factor in any increase in the value of the partnership (or professional corporation) between the date of separation and time of trial. (See *In re Marriage of Aufmuth* (1979) 89 Cal.App.3d 446, 463-465 [152 Cal.Rptr. 668].) Under these circumstances, it could certainly be argued that the lawyer with a small partnership interest in a large law firm may be indistinguishable from an executive with General Motors who also owns shares of General Motors stock, and thus the interest should be valued as near as practicable to the time of trial. In other cases, the general rule might not apply because a formula contained in the partnership agreement for payment upon withdrawal of a partner may also be an accurate method for determining the value of the partnership as a going business, or the parties may not dispute the use of a withdrawal formula to determine the value of the partnership interest. (*In re Marriage of Fonstein* (1976) 17 Cal.3d 738 [131 Cal.Rptr. 873, 552 P.2d 1169]; but see *In re Marriage of Slater* (1979) 100 Cal.App.3d 241, 245 [160 Cal.Rptr. 686], holding the partnership agreement withdrawal formula was inapplicable to a valuation for marital dissolution purposes.)

There was substantial evidence to support the trial court's valuation of the community property interest in James's law practice. His failure to request a statement of decision on the issue is fatal to James's challenge of

that valuation. (See *In re Marriage of Hebbring* (1989) 207 Cal.App.3d 1260, 1274 [255 Cal.Rptr. 488].)

## II. *Reimbursement.*

■ "[A]s a general rule, a spouse who, after separation of the parties, uses earnings or other separate funds to pay preexisting community obligations should be reimbursed therefor out of the community property upon dissolution." (*In re Marriage of Epstein* (1979) 24 Cal.3d 76, 84 [154 Cal.Rptr. 413, 592 P.2d 1165].) However, " 'reimbursement should not be ordered where the payment on account of a preexisting community obligation constituted in reality a discharge of the paying spouse's duty to support the other spouse or a dependent child of the parties.' " (*Id.,* at p. 85.) The trial court ruled James was not entitled to credit for payments made on certain community property obligations pursuant to the October 1985 court order, finding "from review of the Order, Minutes of the Hearing, applications for Order, Declaration in Opposition and Response, that the Court did not mention any right of reimbursement, and that all said payments were to be support."

■ James maintains he reserved the right to claim reimbursement of house and car payments at trial, but does not demonstrate that the trial court's rejection of that claim was erroneous under the *Epstein* exception for payments made in partial satisfaction of support obligations. The documents cited by the trial court provide sufficient evidence to support its conclusion. James's reliance on *In re Marriage of Watts* (1985) 171 Cal.App.3d 366, 372-374 [217 Cal.Rptr. 301], and *In re Marriage of Tucker* (1983) 141 Cal.App.3d 128, 136 [190 Cal.Rptr. 127], is misplaced. Those cases derive from an exception to the general rule of reimbursement applicable where "payment was made on account of a debt for the acquisition or preservation of an asset *the paying spouse* was using and the amount paid was not substantially in excess of the value of the use." (*In re Marriage of Epstein, supra,* 24 Cal.3d at p. 85, italics added.)

■ Although the trial court did reimburse James $37,028 for postseparation separate property contributions to various other community assets, he contends he was denied some $22,000 more by the improper application of Civil Code section 4800.2 to *Epstein* credits.[4] James may not rely on the

---

[4]Section 4800.2 limits reimbursement for separate property contributions to the acquisition of community property to "downpayments, payments for improvements, and payments that reduce the principal of a loan used to finance the purchase or improvement of the property." In *In re Marriage of Hebbring, supra,* 207 Cal.App.3d at page 1272, we held, "the Legislature in enacting section 4800.2 did not intend to limit the broad discretion possessed by the trial court pursuant to *Epstein* and section 4800, subdivision (e), to order reimbursement

trial court's oral statements to that effect to impeach the judgment. (*In re Marriage of Ditto, supra,* 206 Cal.App.3d at pp. 646-649.) Caroline argues the failure to order full reimbursement resulted from James's inability to trace the payments in question to a separate property source and, in any event, reflects a proper exercise of the court's discretion under *Epstein.* Again, James's failure to request a statement of decision is fatal to his argument on appeal on this issue.

■ James also challenges the trial court's order that he reimburse community funds used during marriage to pay his separate obligation property taxes and automobile payments. Citing only *"In Re: Epstein (supra),"* he asserts that a gift is presumed absent contrary agreement. The only remotely similar issue decided in *Epstein* concerned postseparation expenditures. The court held, "When a husband utilizes community funds to pay taxes related to his separate property income he must reimburse the community for such sums." (*In re Marriage of Epstein, supra,* 24 Cal.3d at p. 89.) The trial court did not err in this regard.

Although it is not really a reimbursement issue, James challenges, as a kind of afterthought, his receipt of the entire proceeds of the "Karen Court note," of which he claims half were owed to an associate and the rest "consumed by community payments awaiting trial." He cites no evidence which supports this claim. Furthermore, his assertion that the issue has been conceded because Caroline failed to oppose it is simply untrue.

Finally, James's contention the trial court's division of community property was unequal, unfair, a burden, and a hardship, is merely a rehash of complaints already disposed of.

III. *Inapplicability of Code of Civil Procedure Section 998.*

■ James claims the trial court erred in failing to consider his offer to compromise under Code of Civil Procedure section 998. His reasoning seems to be that section 998 is applicable to family law cases, and its application here would have precluded his being assessed the costs Caroline incurred for her real estate appraiser's appearance at trial to testify as an expert.

The statutory offer to compromise under Code of Civil Procedure section 998 is intended to encourage acceptance of reasonable offers by precluding the plaintiff in a civil case from recovering costs incurred from the time of a

---

of postseparation separate property income that has been used to pay community property obligations existing at separation."

defendant's statutory offer to settle, in the event the plaintiff does not accept the offer and then fails to obtain a more favorable judgment. If a defendant does not accept a plaintiff's offer and fails to obtain a more favorable judgment, the statute gives the court the discretion to require the defendant to pay the otherwise nonrecoverable costs of the plaintiff's expert witnesses.

The Legislature could not have intended Code of Civil Procedure section 998 to apply to family law cases since it has specifically provided how costs, including attorney fees, are to be awarded in proceedings under the Family Law Act in sections 4370 and 4370.5. Under these sections the trial court in a marital dissolution proceeding has much broader authority to award costs than is provided by Code of Civil Procedure section 998.

Section 4370 provides the court with discretion to award necessary attorney fees and costs to a party on the traditional basis of need and the ability to pay. Section 4370.5, on the other hand, provides for attorney fees and costs to be ordered as a sanction akin to a penalty when the conduct of a party or the party's attorney "frustrates the policy of the law to promote settlement of litigation, and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys." (Civ. Code § 4370.5, subd. (b)(2); see Hogoboom & King, Cal. Practice Guide: Family Law I (1989) §§ 14:11.1-14:11.9a & 14:19-14:19.5a, discussing the leading cases of *In re Marriage of Norton* (1988) 206 Cal.App.3d 53 [253 Cal.Rptr. 354]; and *In re Marriage of Melone* (1987) 193 Cal.App.3d 757 [238 Cal.Rptr. 510].)

Given the broad discretion vested in the trial court under the Family Law Act to consider conduct or misconduct of a party or counsel in awarding attorney fees and costs, the Legislature could not have meant to limit this discretion by having the provisions of Code of Civil Procedure section 998 apply.

IV. *Resubmittal to Mediation.*

■ James maintains the trial court erred in awarding Caroline sole physical custody of the parties' three minor children without ordering additional mediation, since he requested joint physical custody at trial. He does not dispute the court's denial of his request for joint custody, nor does he claim there is any deficiency in the court's statement of reasons for denying his request. He contends that the court could not deny his trial request without ordering the issue to mediation as required by section 4607.[5]

---

[5] Section 4607, subdivision (a), provides in pertinent part: "In any proceeding where there is at issue the custody of or visitation with a minor child, and where it appears on the face of the petition or other application for an order or modification of an order for the custody or

James misunderstands the purpose of mediation of custody or visitation disputes. Mediation is provided early in the proceeding to help the parents to reach their own resolution of such disputes. When mediation is unsuccessful in resolving the custody or visitation dispute, the statutory requirement has been met and a resubmittal to mediation need not be ordered at the request of a party upon trial of that dispute. The trial judge possesses considerable discretion to determine whether the facts and circumstances of a case justify a further use of this precious and overtaxed resource. Here, the record supports the court's exercise of discretion not to require additional mediation. In its judgment the court stated "that previous mediation has been tried and failed in this case, that the Court elects not to order the issue relating to joint physical custody to mediation at this time."

### V. *Code of Civil Procedure Section 128.5.*

On July 1, 1987, James moved for a new trial on the grounds of irregularity, surprise, newly discovered evidence, excessive property award, and insufficient evidence. (Code Civ. Proc., § 657.) After a hearing the trial court denied the motion. ■ The exercise of a trial court's "wide discretion" in ruling on a new trial motion is given "great deference" on appeal. (*City of Los Angeles* v. *Decker* (1977) 18 Cal.3d 860, 871-872 [135 Cal.Rptr. 647, 558 P.2d 545].) In his briefs James has simply summarized the conclusory factual allegations made in his moving papers and the points he made at the hearing, most of which also underlie other issues raised on appeal. He cites no legal authority or argument to support his contention that the trial court erred in its ruling. He seems to be saying, "I didn't like the trial judge's rulings and I told him so and he still won't change them." It is difficult to treat such an assertion seriously.

On August 14, 1987, James filed a motion for reconsideration of the denial of his new trial motion (Code Civ. Proc., § 1008). At the close of a hearing on September 10, the trial court announced its intended rulings. On October 28, the trial court filed its order denying the motion—which it called "totally and completely without merit, and therefore frivolous"—and ordering James to pay Caroline's attorney fees (Code Civ. Proc., § 128.5, subd. (b)(2)(A)). James challenges only the imposition of sanctions. (See *I. J. Weinrot & Son, Inc.* v. *Jackson* (1985) 40 Cal.3d 327, 331 [220

visitation of a child or children that either or both such issues are contested . . . the matter shall be set for mediation of the contested issues prior to or concurrent with the setting of the matter for hearing. . . . The purpose of the mediation proceeding shall be to reduce acrimony which may exist between the parties and to develop an agreement assuring the child or children's close and continuing contact with both parents. The mediator shall use his or her best efforts to effect a settlement of the custody or visitation dispute that is in the best interests of the child or children, pursuant to Section 4608."

Cal.Rptr. 103, 708 P.2d 682] [order or portion thereof awarding sanctions appealable].)

■ Our review of James's motion, including its supporting declaration, leads us to the same conclusion reached by the trial court. The motion was totally and completely without merit, and was frivolous. Thus, the court's imposition of sanctions was proper.[6]

## VI. *Attorney Fees and Costs.*

(a) James's request for cost of augmentation.

■ James asks us to assess Caroline for the cost of additional portions of the reporter's transcript which she designated on appeal and which he considers unnecessary. (Cal. Rules of Court, rule 26(a).)[7] Caroline's assertion that she acted to protect her appellate rights is quite credible given the broad scope of James's notice of appeal and his free-wheeling approach to this and myriad related proceedings. Under the circumstances, her actions were, as she says, "appropriate and even imperative." Caroline cannot reasonably have foreseen James's later abandonment of certain issues on appeal.

(b) Appellate attorney fees under section 4370.

■ Caroline asks us for attorney fees on appeal pursuant to section 4370. Section 4370 requires a factual determination as to whether and in

---

[6]It is not inconsistent to hold that one section of the Code of Civil Procedure does not apply to proceedings under the Family Law Act, but another does. Section 998 does not apply because, as previously discussed, the provisions of the Family Law Act, especially section 4370.5, authorize the imposition of attorney fees as a sanction for the misconduct described *in that section. This authority should not be limited to the circumstances set forth in section* 998. Although section 4370.5 would allow imposition of sanctions at any time its conditions are met during a proceeding, it normally is applicable to a course of conduct in the case which is raised by a motion at the conclusion of the case. Section 998 is only applicable at the conclusion of a case. On the other hand, sanctions under Code of Civil Procedure section 128.5 are most often imposed for bad faith, frivolous or delaying tactics as such conduct occurs during the proceeding. Additionally, sanctions pursuant to section 128.5 are limited to the amount necessary to compensate the other party for defending against the improper conduct, while sanctions pursuant to section 4370.5 are not so limited and can constitute a penalty for violation of the statute's declaration of public policy in family law cases to promote settlement of litigation and reduce its cost. (See Hogoboom & King, Cal. Practice Guide: Family Law I (1989) §§ 14:11.1-14:11.9a & 14:19-14:19.5a.)

[7]California Rules of Court, rule 26(a), provides in relevant part, " . . . where any party has required in the typewritten or printed record on appeal the inclusion of any matter not reasonably material to the determination of the appeal . . . the reviewing court may impose upon offending attorneys or parties such penalties, including the withholding or imposing of costs, as the circumstances of the case and the discouragement of like conduct in the future may require."

what amount attorney fees are reasonably necessary for the defense of this and any related proceedings. The trial court's denial of both of Caroline's prior motions (Jan. 20 & Nov. 9, 1988) for attorney fees and costs on appeal was conditional, and her failure to appeal from those orders does not prejudice her current request. ■ Nor does it preclude us from reminding trial courts that California's public policy favors providing "a parity between spouses in their ability to obtain legal representation." (See *In re Marriage of Hatch* (1985) 169 Cal.App.3d 1213, 1215-1216 [215 Cal.Rptr. 789].) This is particularly true where one spouse, as here, obtains free legal services, albeit his own, and the other spouse must pay for her attorney's services. "The basis for awarding attorney's fees is that each party must have access to legal representation in order to preserve all of his or her rights." (*In re Marriage of Barnert* (1978) 85 Cal.App.3d 413, 428 [149 Cal.Rptr. 616].) "To tell a woman who wishes in good faith to appeal a judgment in a divorce action and who is without funds to pay necessary counsel fees that no such fees will be allowed except possibly on an application for a final decree *is practically equivalent to denying her the right to appeal* unless her attorney is willing to act without compensation or for the mere possibility that some attorney's fee may be awarded later." (*Hunter* v. *Hunter* (1962) 202 Cal.App.2d 84, 93 [20 Cal.Rptr. 730], italics added.) This is even more true as to protecting a favorable decision of the trial court on appeal.

■ Apparently the trial court denied Caroline's motions for attorney fees and costs on account for this appeal in the belief it could just as well make such an order when the appeal concluded. Caroline is indeed fortunate to have been able to obtain highly competent appellate counsel willing to represent her on this basis, but it should not have been necessary. As we said in the context of a refusal to make an initial order for attorney fees on account, "It is a fact of life that attorneys representing clients in family law cases frequently do not receive payment of full and adequate compensation for the services they perform. The approach suggested by the trial court would make things even worse. It would compel the attorney to finance the litigation by deferring receipt of payment for services until months or years after they are performed, while the attorney would have to personally advance the costs of overhead attributable to the case. Even worse, it would require attorneys to advance from their own pockets sizable expenditures required as a matter of course in such litigation, such as expenses for depositions and experts. Banks and finance companies are licensed for the purpose of lending money; lawyers are not." (*In re Marriage of Hatch, supra,* 169 Cal.App.3d at p. 1218, fn. 2.)

(c)    Appellate attorney fees under section 4370.5.

■ Caroline also requests an award of attorney fees on appeal pursuant to section 4370.5 Under this section the court may make a "just and

reasonable" award considering both need and "[t]he extent to which the conduct of each party and the attorney furthers or frustrates the policy of the law to promote settlement of litigation, and, where possible, to reduce the cost of litigation by encouraging cooperation between the parties and attorneys."

In this appeal, as in many of the dozen related proceedings filed in this court[8] —some also naming associates, staff, or relatives as parties or counsel—James acts primarily, if not exclusively, as his own attorney.[9] As such, he originally requested permission to file a 72-page opening brief. We denied his request to exceed the 50-page limit specified by California Rules of Court, rule 15(e), finding no reason for such a lengthy brief. Thereafter, he filed a brief which constitutes a travesty of the 50-page limit it purports to satisfy. The brief contains an unnumbered "Introduction" and 10 unnumbered pages of "exhibits." The exhibits consist largely of the text of footnotes which, if correctly placed within the brief, would have made it too long. Moreover, large chunks of textual material have been placed, single-spaced, in 50 footnotes, contrary to formal stylistic conventions, for the sole purpose of reducing the number of pages in the brief. Such sleight of hand is an insult to this court.[10]

It also rendered the brief even more difficult to decipher than it otherwise would be. Footnote numbers, typed in such a way they are easily confused with citations to the record, refer the reader to the bottom of the page, which in turn refers to an "exhibit" or to other pages of the brief itself, where the process is repeated. Record and case citations are often absent,

---

[8] In addition to this case and other related proceedings in the trial courts, we note that 12 proceedings have been filed in this court involving these parties or their attorneys in which James apparently acts as his own attorney. In most James is the appellant. Some have been dismissed or abandoned. All of these appear to be related in some fashion to the dissolution proceeding. (For example, see *Green* v. *Uccelli* (1989) 207 Cal.App.3d 1112 [255 Cal.Rptr. 315] in which we held that Caroline's attorney could not be sued by James in an independent civil action for malicious prosecution, abuse of process or intentional infliction of emotional distress for having withdrawn orders to show cause re contempt against James in the dissolution proceeding.) James acknowledged at oral argument that the other proceedings may be related to this case. We note that section 4370 authorizes the trial court to award attorney fees and costs not only for proceedings under the Family Law Act, but also for "any proceeding related thereto, including after any appeal has been concluded." By our description, we do not determine that any of these other proceedings are "related" to the dissolution proceeding as that term is used in section 4370. They may be, but that is a factual determination to be made by the trial court in the event Caroline makes a motion for attorney fees and costs for other actions as related to the marital dissolution proceeding under section 4370.

[9] Caroline contends James's litigation conduct, more than that of an overzealous litigant, is a deliberate attempt to exhaust her financially and emotionally and deny her effective counsel. If true, this may be considered by the trial court on her motion for attorney fees.

[10] To make matters worse, without a request or approval of this court, and after the cause was submitted, James attempted to file a supplemental brief and to augment the record.

inaccurate, irrelevant, or misleading. From the point of view of grammar and syntax as well as logic, James's briefs are almost impenetrable. Contrary to rules of appellate practice, James cites only evidence supporting his contentions on appeal, entirely ignoring facts which support the judgment.

It is clear from the trial transcript,[11] from the documents in his own appendix, from the number of appeals taken and the slap-dash quality of the briefs and other papers filed therein, and from his repeated delays in paying portions of the judgment (e.g., over $39,000 in attorney fees), that James has consistently attempted to frustrate the policy of the law set forth in section 4370.5 to promote settlement of litigation, reduce costs, and encourage cooperation between the parties.

Thus Caroline is entitled to attorney fees on appeal in an amount to be determined by the trial court pursuant to sections 4370 and 4370.5.

## VII.

The judgment is affirmed. Upon a costs memorandum or motion being filed by Caroline, the trial court shall award Caroline appropriate attorney fees and costs.

Low, P. J., and Haning, J., concurred.

---

[11] At one point, in understandable exasperation, the trial court cut off further questioning under Evidence Code section 352, stating, "I just let this argument go on since early this morning to give the appellate court some flavor of exactly what these parties are like. Because when I make my awards here, I think the appellate court ought to have little bit of flavor of what's been going on in the case." Although the comment did not distinguish between the parties, it is clear that James has been the major transgressor in this regard.