[No. A044736. First Dist., Div. One. Aug. 6, 1991.]

In re the Marriage of CAROLE and GEORGE KILBOURNE.
CAROLE M. KILBOURNE, Respondent, v.
GEORGE W. KILBOURNE, Appellant.

**[Opinion certified for partial publication.†]**

† Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of parts I, III and IV.

**COUNSEL**

Frank R. Frisch for Appellant.

William F. Urich for Respondent.

**OPINION**

**DOSSEE, J.**—This is an action for dissolution of marriage. Wife's petition was filed February 14, 1983. In protracted proceedings extending from October 1985 to January 1986, the trial court took evidence regarding the value of two pieces of real estate, husband's law practice, numerous bank

accounts, stocks and bonds and items of personal property. The trial court issued its memorandum of tentative decision on April 29, 1986, and eventually adopted it as its statement of decision. The court ordered wife's attorney to prepare the judgment. Two and a half years later, in November 1988, the trial court reiterated its order to wife's attorney to prepare the judgment. Judgment was eventually entered in December 1988[1]. Husband appeals and confines his arguments to two item: the family residence and husband's law practice.

## I. *The House*\*

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .  .

## II. *The Law Practice*

Husband is a lawyer, who had been practicing law for 18 years when he married wife in 1970. At the time of the marriage, husband was working in the law offices of Marcus & Ury, Inc., from whom he received a salary. Husband had a few cases of his own, but not enough to make a living. In 1971, husband left Marcus & Ury and opened his own office, taking with him certain assets: a desk, a chair, chair pads, and law books. Husband's practice consisted almost entirely of personal injury cases with fees on a contingency basis.

In 1976 husband formed a joint venture with two other attorneys, Marcus and Kazan, to handle asbestos litigation. Husband spent most of his time on those cases through 1980. In 1979 Marcus died. Marcus's estate brought an action against husband and Kazan to determine proceeds due to the estate for cases handled by the joint venture. At the time of trial in the present case, that litigation was still pending. After Marcus's death, husband formed a new joint venture with Kazan, which was dissolved in 1980.

Husband and wife separated on May 13, 1982. After separation, husband continued to conduct his law practice: he worked on cases that had been opened before separation, and he worked on new cases. He also received fees on cases that had been worked on in part before separation and in part after separation. In at least one instance, however, he received no fee after

---

[1]On appeal, husband complains that the trial court should have prepared the judgment itself and should not have assigned the task to counsel. Husband relies on rule 232(c) of the California Rules of Court, which provides that the court shall prepare a proposed statement of decision and a proposed judgment, unless the court designates a party to prepare the statement of decision. But husband has not demonstrated how a reversal by this court will provide relief. In any event, the rule also provides that if the proposed judgment is not served within 15 days, any other party may submit a proposed judgment. Husband did not avail himself of that remedy.

\*See footnote, *ante*, page 1518.

working on the case for a year's worth of man-hours; the case was dismissed before trial.

The main issue in this appeal is the value of husband's law practice. In this respect, we are guided by the factors set forth in *In re Marriage of Lopez* (1974) 38 Cal.App.3d 93, 110 [113 Cal.Rptr. 58] disapproved on other grounds in *In re Marriage of Morrison* (1978) 20 Cal.3d 437, 453 [143 Cal.Rptr. 139, 573 P.2d 41]: "In determining the value of a law practice or interest therein, the trial court should determine the existence and value of the following: (a) fixed assets, which we deem to include cash, furniture, equipment, supplies and law library; (b) other assets, including properly aged accounts receivable, costs advanced with due regard for their collectability; work in progress partially completed but not billed as a receivable, and work completed but not billed; (c) goodwill of the practitioner in his law business as a going concern; and (d) liabilities of the practitioner related to his business." (Accord, *In re Marriage of Garrity and Bishton* (1986) 181 Cal.App.3d 675, 688-689 [226 Cal.Rptr. 485].)

The courts have recognized that "[a]t any given moment the major assets of most law firms are not capital assets, but those related to the direct rendering of professional services, most particularly accounts receivable and work in process." (*In re Marriage of Green* (1989) 213 Cal.App.3d 14, 21 [261 Cal.Rptr. 294]; see also *In re Marriage of Lopez, supra,* 38 Cal.App.3d at pp. 106-107.) So, too, in the case at bar was the major asset of husband's law practice his work in progress: fees receivable on a contingency basis.

The trial court dealt with the contingent nature of the fees receivable by dividing husband's law practice into segments. First, the court ruled that cases in progress that were opened before separation but that remained unpaid "may have community value and that the Court cannot reasonably determine the community value until the fees have been received." Accordingly, the trial court reserved jurisdiction over all "open cases." The court ordered husband to retain in his trust account all fees and costs as to all open cases and to advise wife's counsel within five days of any such funds. The court also issued an injunctive order restraining husband and Kazan from disbursing any funds from the joint venture cases until further order of the court. The court ruled that fees due on cases opened after separation were husband's separate property, and they were excluded from consideration. No issue is raised on appeal concerning that latter ruling.

Later in the trial, wife presented Leon Fish, a CPA, as an expert witness. Mr. Fish prepared, among other things, balance sheets reflecting the book value of husband's law practice on the date of marriage (June 1970) and on

the date of separation (May 1982). As a result of the trial court's ruling, Mr. Fish excluded from his calculations of work in progress those cases with unpaid contingency fees. He also excluded the joint venture cases.

At the conclusion of trial the court ruled as follows:

(1) The trial court found that no value could be placed on the unpaid contingency fees, and the court reserved jurisdiction to divide those fees as they are paid to husband. The court restrained husband from disbursing any proceeds (except the client's share and except for $15,000) until a court hearing is held to divide the fees.

(2) The trial court also found that it was impossible to determine the present value of the unpaid fees receivable on the joint venture cases. Hence, the court reserved jurisdiction to divide those fees as they are paid. The court restrained both husband and Kazan from disbursing any fees from the joint venture cases until the court so ordered.

(3) The trial court found that husband had received from the date of separation through the date of the injunctive order (Oct. 8, 1985) a total of $235,766 in fees from the joint venture cases. The court determined that 90 percent of the work done on those cases had been before separation; hence, the community had a 90 percent interest in the fees received. The trial court charged husband with receipt of $212,189 in community property.

(4) The trial court placed a value of $312,021 on the rest of husband's law practice, i.e., excluding the joint venture cases and the work in progress set forth above. This value was taken from the balance sheet as of the date of separation prepared by Mr. Fish.[3]

---

[3]Mr. Fish's balance sheet was based on the following assets: cash in the bank; furniture and equipment; prepaid taxes; costs advanced on behalf of clients; discounted present value of fees on two cases payable over time; and "work in progress." With respect to the work in progress, Mr. Fish, based on the trial court's earlier rulings, deliberately excluded from consideration any cases which remained unresolved such that the contingency fees were unknown. He also deliberately excluded from consideration any fees from cases being handled by husband as part of the Marcus-Kazan-Kilbourne or Kazan-Kilbourne joint ventures. Instead, Mr. Fish examined only the cases for which fees were eventually paid during the period from the date of separation to the date of the injunctive order (Oct. 8, 1985).

Mr. Fish offset against the assets of husband's law practice a limited amount of liabilities: funds due to clients from the trust account; tax liabilities on fees payable for the work in progress; and certain operating expenses. Mr. Fish reasoned that because husband's law firm kept current with its accounts payable, at any one point in time—e.g., on the date of separation—the firm would have had few accounts payable. Thus, the expert used one-twelfth of the prior year's expenses, but excluded such expenses as salary, payroll taxes and rent,

In this appeal, husband raises several arguments to challenge the trial court's valuation of the law practice.

## A. *Date of Valuation*

The trial court ruled that the appropriate date for valuing the law practice was the date of separation. This ruling was correct, as husband apparently now concedes.[4]

■ Ordinarily community assets and liabilities must be valued "as near as practicable to the time of trial." (Civ. Code, § 4800, subd. (a).) But Civil Code section 5118 provides that earnings of a spouse while separated from the other spouse are separate property. In reconciling these two provisions, the courts have held that in determining the community value of a professional practice the proper date of valuation is the date of separation. (*In re Marriage of Green, supra,* 213 Cal.App.3d at pp. 20-21; see *In re Marriage of Fink* (1979) 25 Cal.3d 877, 888 [160 Cal.Rptr. 516, 603 P.2d 881].)

## B. *Reservation of Jurisdiction Over Unpaid Fees*

Husband argues that the trial court erred in failing to place a present value on the work in progress and choosing instead to reserve jurisdiction to divide the unpaid fees in the future.[5] We find no error. ■ Civil Code section

---

reasoning that those expenses would always be paid in the month incurred and would not be an account payable.

We note that no determination was made in this case concerning the existence or value of the goodwill of the law practice. No issue is raised on appeal regarding this point.

[4]In his opening brief, husband argues that the trial court should have valued the law practice as of the date of trial. But in his closing brief, husband acknowledges that the proper date of valuation is the date of separation of the parties.

[5]There is no dispute that the fact that husband's right to receive his fees is contingent on future events does not negate their status as divisible community assets. (See, e.g., *In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 745-746 [131 Cal.Rptr. 873, 552 P.2d 1169] [right to withdraw from law firm has present value although contingent and subject to modification]; *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561, 94 A.L.R.3d 164], [unvested pension right constitutes community asset although contingent]; *In re Marriage of Harrison* (1986) 179 Cal.App.3d 1216, 1226 [225 Cal.Rptr. 234] [stock options are community asset although exercisable in the future]; *In re Marriage of Nelson* (1986) 177 Cal.App.3d 150, 154 [222 Cal.Rptr. 790] [same]; *In re Marriage of Judd* (1977) 68 Cal.App.3d 515, 520-521 [137 Cal.Rptr. 318] [retirement annuity is a community asset although not yet matured]; see also *In re Marriage of Zaentz* (1990) 218 Cal.App.3d 154, 164 [267 Cal.Rptr. 31] [movie profits community asset although movie completed after separation]; *In re Marriage of Marx* (1979) 97 Cal.App.3d 552, 561 [159 Cal.Rptr. 215] [accounts receivable of medical practice are community asset]; *In re Marriage of House* (1975) 50 Cal.App.3d 578, 580 [123 Cal.Rptr. 451] [same]; *Waters v. Waters* (1946) 75 Cal.App.2d 265, 270 [170 P.2d 494] [contingency fee received after separation is community asset]; cf. *In re*

4800 expressly empowers the trial court to reserve jurisdiction to make a property division at a later time. (See e.g., *In re Marriage of Munguia* (1983) 146 Cal.App.3d 853 [195 Cal.Rptr. 199].)

We are, of course, aware of the decision in *In re Marriage of Bergman* [(1985)] 168 Cal.App.3d 742 [214 Cal.Rptr. 661], in which this court held the trial court abused its discretion in ordering an open-ended jurisdiction over the community interest in wife's unvested pension plan to divide that interest if and when benefits became payable. The *Bergman* court reasoned that Civil Code section 4800 "requires that community property be divided at the time of the litigation of the dissolution action . . . . Neither the legislative history of section 4800, nor any case analysis but one, provides authority for the proposition that a court may reserve jurisdiction indefinitely to divide a community asset." (168 Cal.App.3d at p. 755.)

We conclude *Bergman* is clearly distinguishable. First, the trial court did not in the present case reserve jurisdiction "indefinitely." California's dismissal statutes (Code Civ. Proc., §§ 583.110-583.430) operate to put a time limit on the resolution of litigation. Cases not brought to trial within five years will be dismissed. (Code Civ. Proc. § 583.360.) At the time of the trial court's decision (1986) the cases opened before separation were four years old. By the time of the judgment (1988) they were six years old. Even if extensions of the five-year statute were given on some of the cases, the period of reserved jurisdiction was necessarily finite.

Furthermore, the trial court's decision in the present case to reserve jurisdiction was a response to husband's argument that no value could be placed on the unpaid contingency fees. Indeed, the trial court faced a difficult task in determining the present value of husband's practice, for husband kept no time records and declined for reasons of client confidentiality to reveal his open files.

The trial court was additionally hampered by husband's omission to call an expert witness. Husband gave only his own opinion on the value of his practice, but his testimony was found not credible by the trial court.

Under these difficult circumstances, the trial court had little choice but to reserve jurisdiction over the unpaid contingency fees. We conclude the trial court acted within the bounds of its discretion.

*Marriage of Andreen* (1978) 76 Cal.App.3d 667, 676 [143 Cal.Rptr. 94] [disability allowance of nondisabled worker too conjectural to be a divisible community asset].)

## C. *Method of Valuation*

In placing a value of $312,021 on the law practice, excluding joint venture and unresolved cases, the trial court accepted the balance sheet prepared by Mr. Fish, who had calculated the value of the law practice by adding fixed assets to work in progress as of the date of separation and then subtracting certain liabilities. As explained above, the "work in progress" used in reaching the value of $312,021 related only to those cases for which fees already had been paid during the period from the date of separation to the date of the injunctive order (Oct. 8, 1985). (Fn. 3, *ante.*) Mr. Fish calculated the value of this segment of the work in progress as of the date of separation by using a "time rule." That is, he measured the time the case had been open (from the date of the first cost to the date of recovery) and allocated a proportionate share of the proceeds to the time before separation and the time after. With respect to husband's open cases for which no fees had yet been collected, the trial court also adopted this "time rule" formula to allocate future fees between the community and husband's separate property and retained jurisdiction to effectuate distribution. With respect to the proceeds from the joint venture cases, the trial court allocated 90 percent to the community based upon a finding that 90 percent of the work done on the cases was done prior to separation. Husband complains that these formulas fail to comport with *Lopez* in that they take account of only the gross fees actually recovered and fail to consider the expenses that went into generating those fees.

■ Under the circumstances of this case, we are persuaded that the time rule formula satisfactorily takes into account the expenses of operating the law practice.[6] The time rule presumes that the operating expenses incurred (including compensable services rendered) on open cases remain at a constant level over time; hence the community is proportionately charged for all expenses incurred during the time prior to separation and husband's separate property estate is proportionately charged for all expenses after separation. Mr. Fish testified that this approach is based on standard accounting principles. Husband himself acknowledged that his overhead varied only slightly over the relevant period.

Indeed, husband in this case offered little assistance to the trial court in selecting a preferable method of prorating expenses. Husband presented no evidence of his actual operating expenses; nor were his time records available. Although husband testified that 75 percent of his fees were allocable to

---

[6]We do not suggest that operating expenses will always be a factor in determining the value of a law practice. In the present case, however, wife does not dispute that the operating expenses must be taken into account in determining the value of the unpaid contingency fees, which constituted the major assets of the law practice.

overhead, the trial court found his testimony not believable. Husband presented no expert witness of his own either to refute the time rule used by Mr. Fish or to offer an alternative method of calculation.

While we recognize that the time rule formula does not account for expenses with absolute accuracy, we note that its application has the advantage of eliminating the need for a case-by-case review and accounting analysis, thereby saving the trial court and the parties considerable litigation time and costs. We do not suggest, however, that the time rule formula will be appropriate in all cases. For example, where sufficient evidence is presented, the trial court may find it appropriate to consider the actual expenses incurred; or, where other formulas are advanced by expert witnesses, the trial court may find another method of calculation more appropriate for the occasion. In the present case, however, where husband presented no credible evidence of his actual operating expenses, we hold the trial court acted properly in adopting the uncontradicted method of calculation put forth by Mr. Fish.

## III., IV.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

## DISPOSITION

The judgment is reversed and the matter is remanded for further proceedings related to distribution of the Christie Drive house. Each party shall bear his or her own costs on appeal.

Newsom, Acting P. J., and Stein, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 31, 1991.

---

*See footnote, *ante*, page 1518.