Filed 10/30/14  Marriage of Pham-Held and Held CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| In re Marriage of MONGTHU PHAM-HELD and DRU D. HELD.<br><br>MONGTHU PHAM-HELD,<br><br>    Appellant,<br><br>      v.<br><br>DRU D. HELD,<br><br>    Respondent. | G048307<br><br>(Super. Ct. No. 06D006569)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Renee E. Wilson, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Mongthu Pham-Held, in pro. per.; The Tu Firm and Hoang Huy Tu for Appellant.

Law Office of N.R. Bauer, Nene R. Bauer; Law Office of Thomas Armstrong and Thomas Armstrong for Respondent.

\*        \*        \*

Mongthu Pham-Held (wife) appeals from a judgment of dissolution entered in February 2013 giving her the family residence (house). She contends the family court erroneously valued the house as of the date she purchased Dru D. Held's (husband) share in August 2006, instead of at the time of trial in March 2012. According to wife, the court abused its discretion when it "barred" her from giving her opinion regarding the value of the house at the time of trial. But because this claim is not supported by the record, which contains no evidence of the value of the house other than at the time of the buyout, no abuse of discretion occurred and the judgment is affirmed.

## FACTS AND PROCEDURAL BACKGROUND

A few months after marrying in February 2003, the parties jointly purchased the house with each paying an equal amount. They separated in June 2006 and husband moved out of the house.

The parties agreed wife would purchase husband's share of the house. In August 2006, husband signed an interspousal transfer grant deed giving wife sole title to the house. The deed was recorded the next month.

The trial court set the matter for an eight-hour trial in May 2012 regarding the disposition of the house. Under a stipulation and order, wife was to provide husband with, among other things, an appraisal of the residence. She did not do so.

Wife attempted to introduce an appraisal report from September 2011 that would purportedly show the house was then worth $1.45 million. But because the person who wrote the report did not testify, the court deemed the document to be hearsay and ruled it did not qualify as a business record.

Wife testified the value of the house at the time of escrow in 2006 was $1.9 million. Husband assessed the house as then being worth slightly more, $1,967,000, which was also the agreed upon amount for the buyout. Wife's forensic accountant –

who was not qualified as an expert in real estate or real estate valuations and had never seen an appraisal – "believed the property had an exclusive listing for $1.9 million."

Before the submission of the case on March 23, 2012, neither party requested a statement of decision. The court issued a tentative decision later that day. Six days later, wife requested a statement of decision, which the court denied as untimely. On May 18, wife moved for reconsideration. Because the motion was untimely and unsupported by appropriate authority, the court denied it without "prejudice to bring the appropriate action (not reconsideration) supported by sufficient evidence." Wife took no further action.

On February 13, 2013, the court entered its final judgment, among other things, awarding wife the house "as her sole and separate property." It found the house was worth $1.9 million. Deducting the amount the parties owed on the property when husband transferred his interest to wife, the court found each party's community share was $500,712. Because husband previously "received [$]535,800" (as part of the 2006 escrow closing), "he was overpaid by [$]35,088," and was ordered "to reimburse [wife] that amount."

## DISCUSSION

Wife contends the court erroneously valued the house at $1.9 million rather than $1.45 million because, given the outstanding indebtedness, the latter would have substantially increased the amount of husband's reimbursement obligation. But the record contains no admissible evidence the house was ever worth $1.45 million.

"The trial court possesses broad discretion to determine the value of community assets as long as its determination is within the range of the evidence presented." (*In re Marriage of Nichols* (1994) 27 Cal.App.4th 661, 670.) Given the scant evidence in the record, no abuse of discretion occurred.

3

Wife relies on Family Code section 2552, which states, "(a) For the purpose of division of the community estate upon dissolution of marriage or legal separation of the parties, except as provided in subdivision (b), the court shall value the assets and liabilities as near as practicable to the time of trial. [¶] (b) Upon 30 days' notice by the moving party to the other party, the court for good cause shown may value all or any portion of the assets and liabilities at a date after separation and before trial to accomplish an equal division of the community estate of the parties in an equitable manner." According to wife, husband never requested an alternate valuation date other than as close to the trial date as possible. As such, she argues the court necessarily had to value the house as of the time of trial and its failure to do so was an abuse of discretion.

The problem, however, is that no admissible evidence was presented as to the house's worth near the trial date. Therefore, the court had no alternative but to value the house as of the 2006 escrow date.

Wife argues the court erred in not admitting her testimony on the value of the house near the time of trial. But the page of the reporter's transcript that she cites, does not relate to either her testimony or the 2011 appraisal report purportedly valuing the house at $1.45 million at the time of trial. "We are not required to search the record to ascertain whether it contains support for [wife's] contentions." (*Mansell v. Board of Administration* (1994) 30 Cal.App.4th 539, 545.)

Nevertheless, our perusal of wife's testimony shows that after her counsel asked her whether the 2011 appraisal report indicated the house was then worth $1.45 million, the court stopped the proceedings to address another matter. Upon going back on the record, wife's counsel did not follow up on the pending question, but rather moved to submit the 2011 appraisal report into evidence, which the court denied on the ground it was hearsay. At no time did the court prevent wife from testifying as to her personal opinion regarding the value of the property at the time of trial. The court also did not "on its own, challenge[] the admissibility of" the 2011 report; it sustained husband's hearsay

4

objection. On appeal, wife does not challenge the exclusion of the 2011 report. Thus, although wife is correct that she, as the owner of the property being valued, may give her opinion regarding how much the house was worth (Evid. Code, § 813, subd. (a)(2)), she has not shown the court "barred" her from doing so.

Wife maintains that spouses must share any decrease in the value of a community home. She reasons that because the value of the house had depreciated to $1.45 million at the time of trial, the court erred in valuing the house as of the time of separation in 2006. But the record contains no admissible evidence the house was ever worth $1.45 million.

CONCLUSION

The judgment is affirmed. Respondent shall recover his costs on appeal.

RYLAARSDAM, ACTING P. J.

WE CONCUR:

MOORE, J.

THOMPSON, J.

5