Filed 7/14/15  Marriage of Kaur and Dhillion CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re the Marriage of SURINDER KAUR and MAKHAN SINGH DHILLON. | H040621 (Santa Cruz County Super. Ct. No. FL034272) |
| SURINDER KAUR, Respondent, v. MAKHAN SINGH DHILLON, Appellant. | |

## I.  INTRODUCTION

Appellant Makhan Singh Dhillon is the former husband of respondent Surinder Kaur.  They were married for over 30 years and have two adult children.  The parties separated in 2009 and Kaur filed a petition for dissolution of marriage in 2012.  At issue in the present appeal is the judgment entered on the trial court's statement of decision on trial of remaining issues.

On appeal, Dhillon contends that the trial court erred in (1) denying his claim for reimbursement of the post-separation mortgage payments he made on the parties' home; (2) improperly characterizing and valuing the parties' real property in India; and (3) finding that Dhillon's trucking business had a goodwill value of $25,000.  For the

reasons stated below, we find no merit in Dhillon's contentions and we will affirm the judgment.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Kaur and Dhillon married in 1976 and have two adult children, son Davillon and daughter Manjit.  Kaur left school in India after the fifth grade and does not read or speak English.  Since 2003, Kaur has had seasonal employment as a produce packager. Dhillon left India before completing high school and speaks limited English.  He is the sole proprietor of a trucking business, Dhillon & Sons Trucking, which he has operated since 1993.

During their marriage, the parties owned a home in Watsonville.  Dhillon made the mortgage payments on the home and Kaur paid for their household expenses from her wages.  This arrangement continued after the parties separated on February 15, 2009. Dhillon lived in the Watsonville home after separation for approximately three years.

On May 21, 2012, Kaur filed a petition for dissolution of marriage.  At that time, Dhillon moved out of the parties' Watsonville home and began living at his son's house. The parties entered into a stipulation effective June 1, 2012, whereby Kaur became responsible for the mortgage payments on the Watsonville home and Dhillon began paying her temporary spousal support of $465 per month.

A court trial on remaining issues was held on March 29, 2013 and April 11, 2013. The trial court issued a tentative statement of decision to which both parties objected.  On October 7, 2013, the court filed its statement of decision on trial of remaining issues. Pertinent here, the court rejected Dhillon's claim under Family Code section 2640[1] for reimbursement of the post-separation mortgage payments he made on the Watsonville home.  The court found that the post-separation mortgage payments were in the nature of

---

[1] All statutory references hereafter are to the Family Code unless otherwise indicated.

temporary spousal support.  As to the parties' claims regarding the real property in India, the court confirmed all of the property to Dhillon and ordered him to make an equalizing payment to Kaur in the amount of $60,000.  The court also confirmed the trucking business to Dhillon, found that the business had an overall value of $40,000 and a goodwill value of $25,000, and ordered him to make an equalizing payment of $20,000 to Kaur.

A judgment incorporating the statement of decision on trial of remaining issues and the parties' "stipulation for status divorce" was entered on February 26, 2014.

### III.  DISCUSSION

#### A.  *Appealability*

Although the parties have not addressed the issue of appealability, "since the question of appealability goes to our jurisdiction, we are dutybound to consider it on our own motion." (*Olson v. Cory* (1983) 35 Cal.3d 390, 398; *Huh v. Wang* (2007) 158 Cal.App.4th 1406, 1413.)  Dhillon filed a notice of appeal from the "judgment after court trial" on January 30, 2014.  However, the judgment incorporating the statement of decision on trial of remaining issues and the parties' "stipulation for status divorce" was not entered until nearly one month later, on February 26, 2014.

California Rules of Court, rule 8.104(d)(2) provides:  "The reviewing court may treat a notice of appeal filed after the superior court has announced its intended ruling, but before it has rendered judgment, as filed immediately after entry of judgment." Additionally, the California Supreme Court has instructed that a notice of appeal " ' "shall be liberally construed in favor of its sufficiency." ' " (*Walker v. Los Angeles County Metropolitan Transportation Authority* (2005) 35 Cal.4th 15, 20.)  We will therefore exercise our discretion under California Rules of Court, rule 8.104(d)(2) to deem this appeal to have been taken from the February 26, 2014, judgment.

3

**B.** *Reimbursement Claim*

In his trial brief, Dhillon stated that he sought "reimbursement for pay down of principal from August 2009 through and including May 2010 ($14,456.04). (See, Attached **Exhibit A**[.])" Exhibit A included Dhillon's calculation of his "SP Mortgage Payments" from March 2009 through May 2010, as well as copies of mortgage account statements for that period.

In the statement of decision filed on October 7, 2013 and incorporated in the judgment, the trial court made the following findings on Dhillon's reimbursement claim: "The parties had a practice for a number of years by which Mrs. Kaur would make payment of various household expenses including food from her wages, and Mr. Dhillon would pay the mortgage. This continued after separation. Mr. Dhillon continued to live in the house for three years after separation. Shortly after the case was filed, the parties entered into a stipulation effective June 1, 2012, by which Mr. Dhillon began making temporary spousal support payments of $465 to Mrs. Kaur, and she became responsible for making the mortgage and other payments related to the home, which she did and has continued to do."

Based on these findings, the trial court determined that Dhillon's "mortgage payments prior to the June 1st agreement were in the nature of temporary spousal support" and ruled that "no §2640 reimbursement due to Mr. Dhillon on account of these payments."

On appeal, Dhillon contends that the trial court erred in denying his reimbursement claim. According to Dhillon, under section 2640, subdivision (b), he is entitled to reimbursement of all of the separate property contributions that he made during the post-separation period of February 2009 to May 2010 to the extent that his payments reduced the principal on the parties' mortgage, in the amount of $12,589.75. Alternatively, Dhillon contends that he is entitled to reimbursement because his post-separation monthly mortgage payments of $1,403.53 greatly exceeded the reasonable

4

amount of temporary spousal support in light of the parties' June 1, 2012, stipulation that Kaur would receive $465 per month in temporary support.

Kaur argues that the trial court properly denied Dhillon's reimbursement claim because he failed to prove that his post-separation mortgage payments came from a separate property source, noting that Dhillon had presented no evidence of the source of the funds he used to make the mortgage payments.

To evaluate Dhillon's contentions of trial court error, we apply the following standard of review. On appeal, the judgment is presumed to be correct. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133.) Further, "in reviewing a judgment based upon a statement of decision following a bench trial, 'any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision. [Citations.]' [Citation.]" (*Estate of Young* (2008) 160 Cal.App.4th 62, 75-76.) We also " 'uphold judgments if they are correct for any reason, "regardless of the correctness of the grounds upon which the court reached its conclusion." ' " (*Howard v. Thrifty Drug & Discount Stores* (1995) 10 Cal.4th 424, 443.)

We agree with Dhillon that his reimbursement claim is governed by section 2640, which authorizes reimbursement of separate property contributions prior to the division of community property. (*In re Marriage of Walrath* (1998) 17 Cal.4th 907, 912-913 (*Walrath*).)

Section 2640 provides in part: "(a) 'Contributions to the acquisition of property,' as used in this section, include downpayments, payments for improvements, and payments that reduce the principal of a loan used to finance the purchase or improvement of the property but do not include payments of interest on the loan or payments made for maintenance, insurance, or taxation of the property. [¶] (b) In the division of the community estate under this division, unless a party has made a written waiver of the right to reimbursement or has signed a writing that has the effect of a waiver, the party shall be reimbursed for the party's contributions to the acquisition of property of the

5

community property estate to the extent the party traces the contributions to a separate property source.  The amount reimbursed shall be without interest or adjustment for change in monetary values and may not exceed the net value of the property at the time of the division."[2]

In the landmark decision *In re Marriage of Epstein* (1979) 24 Cal.3d 76, the California Supreme Court stated that " 'as a general rule, a spouse who, after separation of the parties, uses earnings or other separate funds to pay preexisting community obligations should be reimbursed therefor out of the community property upon dissolution.  However, there are a number of situations in which reimbursement is inappropriate, so reimbursement should not be ordered automatically.  [¶] . . . [¶] . . . [R]eimbursement should not be ordered where the payment on account of a preexisting community obligation constituted in reality a discharge of the paying spouse's duty to support the other spouse or a dependent child of the parties.' " (*Id.* at pp. 84-85; see also *In re Marriage of Garcia* (1990) 224 Cal.App.3d 885, 892 [where wife lived in the family home post-separation husband could be ordered to pay all or part of monthly mortgage to meet wife's need for housing]; *In re Marriage of Hebbring* (1989) 207 Cal.App.3d 1260, 1271 [absent a temporary support order, a spouse's support obligation is considered before reimbursement for post-separation payments on community obligations].)

However, we need not determine whether the trial court properly denied Dhillon's claim under section 2640 for reimbursement on the ground that his post-separation mortgage payments were in the nature of temporary spousal support.  As Kaur has pointed out, Dhillon did not present any evidence to prove that the source of the funds he

---

[2] "Section 2640 was originally enacted in 1983 as Civil Code section 4800.2.  It was recodified without substantive change as section 2640 when the Family Code was created in 1992.  [Citation.]" (*Walrath*, *supra*, 17 Cal.4th at p. 912, fn.3.)

6

used to make the mortgage payments was his separate property. We agree with Kaur that this omission is fatal to Dhillon's section 2640 reimbursement claim.

Section 2640, subdivision (b), expressly provides that "the party shall be reimbursed for the party's contributions to the acquisition of property of the community property estate to the extent the party traces the contributions to a separate property source." "If the paying spouse simply sits back and does nothing, there will be no reimbursement." (*In re Marriage of Feldner* (1995) 40 Cal.App.4th 617, 625.) Thus, a husband's claim for reimbursement of his contributions of separate property to acquire or improve the family home was properly denied under section 2640 where the husband failed to meet his burden to trace his contributions to a separate property source. (*In re Marriage of Geraci* (2006) 144 Cal.App.4th 1278, 1288-1289; *In re Marriage of Braud* (1996) 45 Cal.App.4th 797, 825 [same].)

In this case, the record reflects that during trial court proceedings Dhillon did not attempt to trace the funds he used to make the post-separation mortgage payments on the Watsonville home to a separate property source. Moreover, he has not directed us to any evidence in the record showing that the source of the funds was separate property. We therefore determine that Dhillon did not provide sufficient evidence to meet his burden to trace his post-separation mortgage payments to a separate property source as required for reimbursement under section 2640, subdivision (b). For that reason, we conclude that the trial court did not err in denying Dhillon's reimbursement claim.

### B. *India Real Property*

Dhillon stated in his trial brief that there were two real properties in India at issue in this marital dissolution case. He asked the trial court to determine the community interest in three acres and to order that the community acreage be split between the parties. Dhillon also stated that he had inherited a house and land in India, and requested that Kaur be required to make her claim to that property in India where the other owners of the property could be joined and his mother's legal interest ascertained.

7

Kaur asserted in her trial brief that the parties had acquired seven acres and a house in India during their marriage. She asked that Dhillon be required to make a full disclosure regarding the India properties; that the India properties be presumed to be community property absent proof of Dhillon's separate property interest; and that the India properties be sold and the proceeds divided.

At the outset, the trial court rejected Dhillon's argument, made for the first time in his post-trial brief, that the court should apply the property laws of India in deciding the characterization of the India real properties and determined that the India property issues should be decided on the facts and California law.

The trial court then noted the lack of evidence regarding the India properties: "During the course of the marriage, the Mr. Dhillon invested community property funds in several properties in India. The evidence about these properties, entirely in the control of Mr. Dhillon as all involve his family members as co-owners, was extremely sketchy. No meaningful value evidence was provided. No accounting has ever been provided to Mrs. Kaur regarding any actual use of the funds, nor of any income from the investments or the cost, if any, of maintaining the investments. The money transferred was all in cash. No title documents or receipts of any type were produced. No opinions were provided as to any current value."

According to the statement of decision, the parties' daughter, Manjit, testified that Dhillon purchased seven acres of agricultural land in India in 1999 with $60,000 to $70,000 in community funds. At that time, Manjit was the bookkeeper for Dhillon's trucking business. Manjit also testified that sometime prior to 2008, Dhillon spent $60,000 to $70,000 in community funds to build a house on real property inherited by Dhillon, his mother, and two of his brothers. Manjit further testified that she had been taken to see three retail shops in India, one of which belonged to Dhillon. In his testimony, as reflected in the statement of decision, Dhillon disagreed with Manjit

8

regarding the amount of his investments in the India properties and denied owning a shop.

The trial court found, "[b]ased on the prima facie evidence presented by Mrs. Kaur, through Manjit, that at least $120,000 was invested in these two properties, and the failure of Mr. Dhillon to provide any receipts for either transaction, any information as to how the funds were used in building the house, the current value of either property, the rental value of either property, or the expenses of continuing to own either property, the Court finds that he has breached his fiduciary obligations regarding disclosures and the management of these investments, and finds that the agricultural land and Mr. Dhillon's interest in the residential improvements constructed on the land he co-owns with his family are community properties having a value of $120,000. (The Court finds there is insufficient information about the existence of an interest in a retail shop in the face of the denial that any such shop exists by Mr. Dhillon, and makes no finding regarding any community interest in such a shop.) The Court confirms all of the property in India to Mr. Dhillon. He is required to make an equalizing payment to Mrs. Kaur in the amount of $60,000."

On appeal, Dhillon argues that the trial court erred in shifting the burden of proof to him as the managing spouse and disregarding his testimony as to the value of the India properties, because Kaur failed to meet her burden of showing that a community asset under his control had disappeared. Dhillon further argues that the evidence showed that Kaur was aware of all of the India property transactions; the agricultural acreage should be confirmed to him with a value of $42,000 on the date of trial, based on his trial testimony; the inherited land is his separate property; and the community should be reimbursed $23,000 for its contributions to developing the inherited land. Dhillon relies on section 2552, subdivision (a) which provides: "For the purpose of division of the community estate upon dissolution of marriage or legal separation of the parties, except

9

as provided in subdivision (b), the court shall value the assets and liabilities as near as practicable to the time of trial."

Kaur rejects Dhillon's contention that the trial court improperly shifted the burden of proof to him, arguing that burden shifting was appropriate because Dhillon had sole control of the facts regarding the India properties and he had breached his fiduciary duties regarding disclosure and management of the properties. She also argues that the trial court's findings of fact regarding property values were appropriate based upon the amount of community funds that Dhillon had diverted.

We review the trial court's rulings regarding the India properties under the substantial evidence standard. "The trial court possesses broad discretion to determine the value of community assets as long as its determination is within the range of the evidence presented. [Citation.] The valuation of a particular asset is a factual question for the trial court, and its determination will be upheld on appeal if supported by substantial evidence in the record. [Citation.] All issues of credibility are for the trier of fact, and all conflicts in the evidence must be resolved in support of the judgment. [Citation.] The trial court's judgment is presumed to be correct on appeal, and all intendments and presumptions are indulged in favor of its correctness. [Citation.]" (*In re Marriage of Nichols* (1994) 27 Cal.App.4th 661, 670.)

Burden shifting was addressed in the decision *In re Marriage of Prentis-Margulis & Margulis* (2011) 198 Cal.App.4th 1252. The appellate court ruled that " ' " '[w]here the evidence is necessary to establish a fact essential to a claim lies peculiarly within the knowledge and competence of one of the parties, that party has the burden of going forward with the evidence on the issue although it is not the party asserting the claim.' [Citations.]" [Citation.]' [Citations.] [¶] Concerns over 'unequal access to evidence' [citation] are particularly pressing in the context of a marital dissolution where financial records can be crucial to ensuring the equal division of property required by Family Code section 2550." (*Id.* at p. 1268.)

10

However, we need not consider whether the trial court properly shifted the burden of proof in this case. We find no merit in Dhillon's contentions that the trial court erred in shifting the burden of proof to him as the managing spouse and disregarding his testimony as to the value of the India properties, since Dhillon did not include a reporter's transcript in the record on appeal. "Where no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct* as to *all evidentiary matters.* To put it another way, it is presumed that the unreported trial testimony would demonstrate the absence of error. [Citation.] The effect of this rule is that an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence. [Citations.]" (*Estate of Fain* (1999) 75 Cal.App.4th 973, 992 (*Fain*); see also *Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187 [failure to provide an adequate record on an issue requires the issue to be resolved against appellant].)[3]

We find no apparent error on the face of the existing appellate record, since the trial court could properly rely on the testimony of one witness, Manjit, regarding the community funds that had been invested in the India properties. (See *In re Marriage of Mix* (1975) 14 Cal.3d 604, 614 [the testimony of one witness may be sufficient].) Dhillon's argument that the trial court erred in disregarding his testimony concerning the

---

[3] We grant Kaur's motion to strike the declaration of Dhillon's attorney, Liliana Diaz, that Dhillon attached to his reply brief to explain the lack of a reporter's transcript. "It has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' [Citation.]" (*In re Zeth S.* (2003) 31 Cal.4th 396, 405.)

We deny Kaur's motion for sanctions on the ground that the appeal is frivolous in the absence of a reporter's transcript. On the record before us, we do not find that the appeal was taken for an improper purpose, or that this is a case of sufficiently "egregious conduct." (See *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 651.)

11

India properties is unavailing since he is precluded from challenging the sufficiency of the evidence due to the lack of a reporter's transcript. (See *Fain*, *supra*, 75 Cal.App.4th at p. 992.) We therefore find no merit in Dhillon's contention that the trial court erred in its characterization and valuation of the India properties.

### C. *Goodwill Value*

In her trial brief, Kaur sought one-half the value of Dhillon's trucking business, including the operating assets and goodwill, since the business was created during their marriage. Dhillon did not address the trucking business in his trial brief.

The trial court made several findings of fact regarding the trucking business, as follows. Dhillon has been a truck driver for 26 years and has operated Dhillon & Sons Trucking since 1993. The only asset of the business is a tractor-trailer that he uses to do sub-hauling work provided by his cousin's company, Reliable Transportation. Dhillon's tax records for 2011 showed that his trucking business grossed $147,145, he netted $42,829, and he claimed $10,667 for meals and entertainment. The trial court determined that the expenses claimed for meals and entertainment were not legitimate and found that Dhillon's actual annual income from his business was $65,000.

Regarding the goodwill valuation of the trucking business, the trial court determined that the business was a community asset and rejected Dhillon's contention that the business had no goodwill value because his continued business was based on his relationship with his cousin. The trial court further determined that "[w]hat Mr. Dhillon enjoys is the value of knowing that he has no marketing expense for his business as his repeat business with his cousin is based on his reputation for dependability, a reputation built up over the 23 years of marriage up to the date of separation that allows his cousin to know that he can be counted on, a cousin who is able to provide him with sufficient business to place his earnings at least at an average amount for truckers, if not more, all without having to expend anything on marketing. The 'silent partner' spouse is entitled to have a value attributed to this, as it is this 'goodwill' that will enable Mr. Dhillon to

12

continue earning at this rate so long as he wishes to continue driving. The Court finds that the business has a 'goodwill' value for the purpose of this case of $25,000, and an overall value of $40,000. The Court confirms this property to Mr. Dhillon. He is required to make an equalizing payment to Mrs. Kaur in the amount of $20,000."

On appeal, Dhillon contends that his trucking business cannot have a goodwill value because he is a natural person and he has only one customer, Reliance Transportation (named Reliable Transportation in the statement of decision). Dhillon also contends that there is not substantial evidence to support the trial court's finding that his business has a goodwill value of $25,000 since no evidence was presented to support the goodwill calculation, such as a truck driver's average salary or an appropriate capitalization factor.

Kaur responds that it is well established that goodwill can attach to any kind of business and Dhillon's substantial evidence challenge to the trial court's goodwill calculation is foreclosed due to the lack of a reporter's transcript.

Our review of Dhillon's challenge to the trial court's goodwill valuation is governed by the following general rules. "No rigid rule applies for determining the value of goodwill. [Citation.] Rather, it 'may be measured by "any legitimate method of evaluation that measures its present value by taking into account some past result," so long as the evidence "legitimately establishes value." [Citation.]' [Citation.] '[E]ach case must be determined on its own facts and circumstances and the evidence must be such as legitimately establishes value. [Citations.]' [Citation.] Because goodwill value of a business is a question of fact for the trial court, its determination will be upheld if supported by substantial evidence. [Citation.]" (*In re Marriage of Ackerman* (2006) 146 Cal.App.4th 191, 200.)

We are not convinced by Dhillon's argument, as we understand it, that his trucking business does not have a goodwill value because he is a natural person, he is not a professional, and the trucking business therefore cannot be considered a business to

13

which goodwill attaches.  Dhillon relies on the decision in *In re Marriage of McTiernan & Dubrow* (2005) 133 Cal.App.4th 1090 (*McTiernan*), but that decision does not support his position.  In *McTiernan*, the husband contended there was no goodwill value in his career as a motion picture director and the appellate court agreed, finding that "[a] business is a professional, commercial or industrial enterprise with assets; 'a business' is not earning capacity or professional reputation." (*Id*. at p. 1102.)  Based on the trial court's findings, Dhillon's trucking business satisfies the *McTiernan* definition of a business to which goodwill may attach since it is a commercial enterprise (as shown by Dhillon's tax records claiming business expenses) and has an asset (the tractor trailer).

As to Dhillon's contention that there is not substantial evidence to support the trial court's finding that his business has a goodwill value of $25,000, our review is again constrained by the rule that "[w]here no reporter's transcript has been provided and no error is apparent on the face of the existing appellate record, the judgment must be *conclusively presumed correct* as to *all evidentiary matters. . . .*  The effect of this rule is that an appellant who attacks a judgment but supplies no reporter's transcript will be precluded from raising an argument as to the sufficiency of the evidence.  [Citations.]" (*Fain*, *supra*, 75 Cal.App.4th at p. 992.)  We find no apparent error on the face of the existing appellate record, which indicates that the trial court's goodwill valuation was not arbitrary because the court based its goodwill calculation on the income tax records for Dhillon's trucking business.

We therefore conclude that Dhillon's contention that the trial court erred in finding that his trucking business had a goodwill value of $25,000 lacks merit.

## IV.  DISPOSITION

The February 26, 2014 judgment is affirmed.

14

_____

BAMATTRE-MANOUKIAN, ACTING P.J.

WE CONCUR:

_____

MIHARA, J.

_____

GROVER, J.