[L.A. No. 30580. Aug. 19, 1976.]

In re the Marriage of SARANE and HAROLD FONSTEIN.
SARANE FONSTEIN, Appellant, v.
HAROLD FONSTEIN, Appellant.

**COUNSEL**

Milton R. Gunter, Amil Roth, Green & Glusker and Michael K. Collins for Appellant Wife.

Loeb & Loeb and Jerome L. Goldberg for Appellant Husband.

## OPINION

**SULLIVAN, J.**—In this action for dissolution of marriage, appellant Sarane Fonstein (Sarane) appeals from that portion of an interlocutory judgment of dissolution of marriage dividing the community property.[1] Specifically, she challenges the trial court's valuation, as an item of community property, of cross-appellant Harold Fonstein's (Harold) interest in his law partnership. The crucial question which we face is whether in valuing the above item of community property which was awarded to the husband and not divided in kind, the trial court erred in taking into account the tax consequences which might result to the husband in the event he subsequently decided to convert the item into cash, and in reducing the current value of the item accordingly. As will appear, we conclude that it did and reverse that portion of the judgment appealed from.

Harold and Sarane were married on January 30, 1954, and separated on September 15, 1972. There are three children born of the marriage. On February 5, 1973, Sarane commenced the instant proceeding. After a six-day trial, dealing primarily with the issues of spousal support and the valuation of the assets of the community, the trial court made findings of fact and conclusions of law and in accordance therewith entered an interlocutory judgment declaring that the parties were entitled to have their marriage dissolved, dividing the community property of the marriage, ordering payment of community debts and awarding child and spousal support.

The court awarded Sarane certain of the community property with a total value of $73,997, including the family residence, household

---

[1]Appellant's notice of appeal indicates that she appeals from that portion of the interlocutory judgment dividing the community property and awarding spousal support. In addition, she states in her notice that she appeals from the final judgment of dissolution and from the denial of her motion for a new trial. Appellant now contests only the division of the community property and has abandoned her appeal from the award of spousal support. (*Hansen* v. *Hansen* (1965) 233 Cal.App.2d 575, 581 [43 Cal.Rptr. 729].) Moreover, the final judgment of dissolution covered only those portions of the interlocutory judgment dissolving the marriage and awarding attorney's fees and child support. The issues pertaining to the division of the community property and the award of spousal support were specifically excepted from the final judgment. Since appellant makes no contentions pertaining to the matters contained in the final judgment, we may assume she has abandoned that portion of her appeal. Finally, since a denial of a motion for a new trial is not an appealable order, her purported appeal therefrom must be dismissed. (Code Civ. Proc., § 904.1; *Hansen* v. *Hansen, supra,* 233 Cal.App.2d 575, 578-579; 6 Witkin, Cal. Procedure (1971) Appeal, § 71, and cases cited therein.)

furniture and furnishings, 400 shares of stock and an automobile. Harold was awarded community property determined to have a value of $123,848. The court ordered him to pay out of his share of the community property outstanding community debts including fees to Sarane's attorney for his services in the dissolution proceeding. Harold was ordered then to pay to Sarane one-half of the difference between the remaining value of community property awarded to him and the value of the community property awarded to Sarane.

One of the items of community property awarded to Harold was his interest in his law partnership. He became a partner in the firm in 1964, during the marriage. The parties do not dispute that his interest in the partnership, if it has any value, is community property. The partnership operates pursuant to a written agreement dated May 25, 1972. Pertinent to this case are the portions of the agreement providing for payments to partners by the firm in the event of their death, disability, retirement, or voluntary withdrawal. For the purpose of determining the total amount of these payments, each partner is assigned an equity percentage figure.[2] Harold's figure is 8 percent.

In the event of a partner's voluntary withdrawal from the firm, he will receive a total payment approximately equal to one-half of three times the average annual earnings of the firm over the preceding three years multiplied by the partner's equity percentage. The partner will also receive his capital account which consists primarily of his unwithdrawn earnings. This total amount is to be paid in installments without interest over a period of five or nine years, depending upon whether more than one partner is being paid at any one time. These payments are not funded in any way and are to be paid from current partnership income.

The trial court found that the value of Harold's partnership interest was $49,977. As revealed in its memorandum of intended decision, the court valued his interest in the partnership by determining the present value of his contractural right to voluntarily withdraw under the firm's partnership agreement. Briefly stated, this method first required a determination of the total amount of payments based on Harold's equity percentage plus his capital account which he would receive in the event

---

[2]The distribution of income of the partnership is in accordance with a different formula based on income units allocated to each partner. These income units appear to have no direct mathematical relationship to the equity percentage assigned to each partner for purposes of termination payments.

of his withdrawal. It was then concluded that Harold would receive these payments over a nine-year period in view of the recent death of another partner. Accordingly, this stream of payments was discounted at a 7 percent rate to a present value of $110,417. This amount was then further discounted in accordance with an estimate of the potential state and federal income tax consequences of Harold's receipt of withdrawal payments, resulting in the final figure of $49,977. Sarane disputes the validity of this final step.

At the outset, however, we dispose of two subordinate issues. Harold has moved to dismiss Sarane's appeal on the ground that she has accepted the benefits of the judgment and thereby has waived her right of appeal. Harold has also cross-appealed asserting that his interest in the law partnership is a mere expectancy with no present value subject to division upon dissolution of this marriage.[3]

█ The settled rule that the voluntary acceptance of the benefits of a judgment will bar appeal therefrom (*Gudelj* v. *Gudelj* (1953) 41 Cal.2d 202, 214 [259 P.2d 656]; *Schubert* v. *Reich* (1950) 36 Cal.2d 298, 299 [223 P.2d 242]) is subject to qualifications applicable to this case. First, the appellant must demonstrate a clear and unmistakable acquiescence in, or, to put it another way, an " 'unconditional, voluntary, and absolute' " acceptance of, the fruits of the judgment. (*Gudelj, supra*, at p. 214; *Hansen* v. *Hansen, supra*, 233 Cal.App.2d 575, 580.) Furthermore, where the benefits accepted are those to which the appellant would be entitled even in the event of reversal, acceptance thereof does not bar prosecution of the appeal. (*Gudelj, supra*, at p. 214; *Schubert* v. *Reich, supra*, at p. 299; *Harrold* v. *Harrold* (1950) 100 Cal.App.2d 601, 605 [224 P.2d 66].) Thus, "[i]f the appeal is only from a portion of a judgment in which the issues are severable, the portions from which no appeal is taken may become final and beyond the scope of review of the appellate court [citations]; and so where the judgment clearly establishes the appellant's right to recover but the amount is less than he demands, he may accept it and nevertheless appeal, claiming the larger recovery. [Citations.]" (*Hansen* v. *Hansen, supra*, at p. 580.)

█ Sarane's occupancy of the family residence does not reflect a clear and unmistakable acceptance of that portion of the award of

---

[3]Harold's notice of appeal states that he appeals from all of the interlocutory decree and final decree except those portions declaring the parties' marriage to be dissolved. Since defendant contests only the inclusion of his law partnership interest as an item of community property, we can assume he has abandoned his appeal as to any other issues covered by his notice. (See authorities in fn. 1, *ante.*)

community property. (See *Gudelj* v. *Gudelj, supra,* 41 Cal.2d 202, 215.) She merely continues her use of the premises as a home for herself and the children of the parties. There is no indication that that use is adverse to any claim by Harold of an interest in the property. While Harold, of course, does not use the property, there is no indication that he desires to do so. Most importantly, Sarane has not received a deed to the premises and record title remains joint.

As to Sarane's receipt of spousal and child support and as to the payment of fees to her attorney, it has often been recognized that these items are severable from the portion of the judgment in a dissolution proceeding dividing the community property and that an appeal therefrom is not barred by acceptance of these items. (*Browning* v. *Browning* (1929) 208 Cal. 518, 524-526 [282 P. 503]; *Hansen* v. *Hansen, supra,* 233 Cal.App.2d 575, 581-582; *Di Grandi* v. *Di Grandi* (1951) 102 Cal.App.2d 442, 444-445 [227 P.2d 841];) Finally, Sarane's receipt of 400 shares of stock, while constituting acceptance of a portion of her award of community property, does not bar her appeal. Without detailing the precise figures, it appears that even if we were to conclude that Harold's partnership interest was not subject to division, Sarane would be entitled to community property having a value greater than the value of the stock which she has received. She is therefore not precluded from seeking a larger recovery and if our conclusions herein require the trial court to readjust the division of property, it can take into account her receipt of the stock. (*Hansen* v. *Hansen, supra,* at pp. 580, 582.) Harold's motion to dismiss Sarane's appeal is therefore denied.

■ Harold's cross-appeal is also without merit. He contends that his contractual right to withdraw from his partnership is a mere expectancy with no present value subject to division because it is contingent upon his decision to withdraw and because his withdrawal rights are always subject to modification by agreement of the partners. This argument misconstrues the facts. The asset being divided in this proceeding is Harold's interest in his partnership, not his contractual withdrawal rights. The value of the withdrawal rights was considered by the trial court merely as a basis for valuing the partnership interest. The interest in the partnership is an interest in a "going business," as it were; there is nothing in the record indicating that such "business" lacks assets or value. Moreover, Harold's argument that his contractual right to withdraw from his firm is a mere expectancy with no present value is erroneous under established authorities. His withdrawal rights are

analogous to the pension rights which have been held to be community property when subject only to conditions within the control of the employee. (*Waite* v. *Waite* (1972) 6 Cal.3d 461, 472 [99 Cal.Rptr. 325, 492 P.2d 13]; *In re Marriage of Peterson* (1974) 41 Cal.App.3d 642, 650-651 [115 Cal.Rptr. 184].) Furthermore, in view of our decision in *In re Marriage of Brown* (1976) 15 Cal.3d 838 [126 Cal.Rptr. 633, 544 P.2d 561], holding nonvested pension rights to be community property, contractual rights, where the right to payment is earned during marriage, are community property though contingent upon future events. (*Id.*, at pp. 846-847, and fn. 8.) Finally, the power to modify the partnership agreement is not a contingency at all. Harold owns an enforceable contractual right to receive payments upon his voluntary withdrawal from the firm. His right to withdraw with payments cannot be defeated or diminished without his agreement and it is therefore a valuable property right.

We now turn to Sarane's appeal. Again, before reaching the fundamental issue, we must respond to a subordinate argument. ■ Sarane contends that in valuing Harold's interest in his partnership the trial court should have readjusted and increased his equity percentage to reflect the death and consequent withdrawal from the firm of one of the partners.

As a matter of abstract logic, Sarane would seem to be correct in asserting that when one member of a partnership withdraws the percentage interests of the remaining partners should increase. In this case, however, the trial court valued Harold's partnership interest not as a percentage of partnership assets, but in terms of the value of his right to withdraw from the firm as provided in the partnership agreement. Sarane concedes the validity of this method of valuing the interest, and contests only the use of the 8 percent figure provided in the partnership agreement, as Harold's equity percentage. But, the terms under which Harold may withdraw from the firm and the consequent value of his right to withdraw are governed entirely by the partnership agreement. Whether his equity percentage for computing his withdrawal payments should be increased because of the death of his partner depends upon an interpretation of the partnership agreement.

■ Our review of the trial court's interpretation of the agreement is governed by the settled rule that where extrinsic evidence has been properly admitted as an aid to the interpretation of a contract and the evidence conflicts, a reasonable construction of the agreement by the

trial court which is supported by substantial evidence will be upheld. (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839]; *Robinson & Wilson, Inc.* v. *Stone* (1973) 35 Cal.App.3d 396, 407 [110 Cal.Rptr. 675]; *Smith* v. *Arthur D. Little Inc.* (1969) 276 Cal.App.2d 391, 401 [81 Cal.Rptr. 140]; *Rabinowitch* v. *Cal. Western Gas Co.* (1967) 257 Cal.App.2d 150, 157 [65 Cal.Rptr. 1]; 6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 258, and cases cited therein.) ▇ The partnership agreement provides that "[e]ffective as of the date of death, the deceased partner's equity percentage [set forth in the paragraphs of the agreement governing death, disability, retirement and withdrawal payments] shall be eliminated." The trial court understandably concluded that the cryptic phrase "shall be eliminated" was ambiguous on the effect of the death of a partner on the percentage figures to be used in calculating withdrawal payments to other partners. Accordingly the trial court admitted conflicting extrinsic evidence as an aid to interpreting the agreement. Sarane's expert witness testified that, based upon his reading of the agreement and upon accepted accounting practices, the percentage figures assigned to each partner should be recomputed to reflect the withdrawal of the deceased partner. Harold's witnesses, including two of his partners, testified that it was not the intention of the partners in drafting the agreement that their equity percentage figures would be recomputed upon the death of another partner. The trial court's conclusion that the 8 percent figure set forth in the agreement was to be used in computing Harold's withdrawal payments was certainly reasonable and amply supported by the above evidence.

▇ We finally reach the main issue of the appeal: In valuing Harold's interest in the law partnership on the basis of his contractual right to withdraw from the firm, did the trial court err by taking into account the tax consequences which he might incur *if* he did withdraw at some later time, and by reducing the value of his interest accordingly, even though Harold was not withdrawing and had no intention to withdraw?

We considered the converse of the instant situation in *Weinberg* v. *Weinberg* (1967) 67 Cal.2d 557 [63 Cal.Rptr. 13, 432 P.2d 709]. There the trial court awarded the plaintiff wife a money judgment for half the full value of the community interest in defendant husband's wholly owned corporations. We upheld the monetary award to the plaintiff in lieu of a division of stock of the corporations and rejected the husband's contention that the award to the wife should have been reduced by the

tax obligation which would have been incurred had the stock been sold.[4] We reasoned: "Although there will be tax consequences if defendant satisfies the judgment by withdrawing funds from the corporations or selling some of his stock, there is no indication that he must or intends to do either to satisfy the judgment. He may choose to borrow the money or make the payments out of other property. Of course, once the property is divided pursuant to the trial court's order, the future tax consequences may vary on further sale or liquidation from what they would have been had the property been divided differently. The trial court need not speculate on such possibilities, however, or consider tax consequences that may or may not arise after the division of the community property. (Cf. *Harley* v. *Whitmore* (1966) 242 Cal.App.2d 461, 471 [51 Cal.Rptr. 468]; *Greene* v. *Wilson* (1962) 208 Cal.App.2d 852, 856 [25 Cal.Rptr. 630]; *Mayberry* v. *Whittier* (1904) 144 Cal. 322, 325 [78 P. 16].)" (67 Cal.2d at p. 566.)

We shall point out how the foregoing rationale is applicable to the case at bench and ultimately resolves the main issue on appeal. We first advert to some settled precepts. ■ In dividing the community property equally under the mandate of Civil Code section 4800, subdivision (a), the court must distribute both the assets and the obligations of the community so that the residual assets awarded to each party after the deduction of the obligations are equal. (Cal. Rules of Court, rule 1242; see *Wong* v. *Superior Court* (1966) 246 Cal.App.2d 541, 547 [54 Cal.Rptr. 782]; Walzer, Cal. Marital Termination Settlements (Cont. Ed. Bar 1971) § 4.2, p. 54; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Community Property, § 96, pp. 5186-5187.) "The obligations to be allocated are those that could be enforced against one or more assets included in the division, either because the obligation is secured by an encumbrance on the asset or because the asset could be reached on execution if the obligation were reduced to judgment." (Walzer, *supra*, § 4.19, p. 67; *In re Marriage of Eastis* (1975) 47 Cal.App.3d 459, 463 [120

---

[1] There is another aspect of *Weinberg* analogous to the instant case. The trial court found that there were profits and accruals in defendant's corporations which were in excess of his separate property investment and interest thereon which were not withdrawn as salary. The court therefore concluded that part of the defendant's interest in his business was community property. The defendant, assuming that the trial court had found that he had neglected to withdraw "adequate" salaries from the corporations, argued that if he had in fact done so, such withdrawals would have been taxed at a 70 percent rate and that therefore the plaintiff was entitled to only half of the remaining 30 percent. We rejected the argument, first noting that the "trial court was not concerned . . . with whether defendant paid himself an 'adequate' salary, but only with what proportion of the business was community property. [Moreover, t]hat proportion was not affected by a tax obligation that might have been but was not incurred." (67 Cal.2d at p. 565.)

Cal.Rptr. 861].) However as *Weinberg* makes clear, once having made such equal division, the court is not required to speculate about what either or both of the spouses may possibly do with his or her equal share and therefore to engraft on the division further adjustments reflecting situations based on theory rather than fact. ■ ■■■ The division, having been properly accomplished, is, as it were, functus officis; it is beside the point, to conjure up other results, had it been done differently.[5]

■ Applying these principles to the case at bench, we first observe that the tax obligations which Harold contends should be charged against the community property of this marriage will be incurred, if at all, only after dissolution of the marriage and division of the community property. At that time, Harold's interest in his law partnership will be his separate property; it will be solely his decision to receive taxable withdrawal payments and the benefit of those payments will go to him alone. Under these circumstances, any tax which may be imposed could not be enforced against Sarane's share of the parties' former community property. This is not a situation where a debt has been incurred by one of the spouses which could be enforced against the community assets during marriage. Thus, this case is not subject to "the general rule that upon a division of community property under a divorce decree the former husband and wife each take the part awarded subject to prior liens; and . . . that the part awarded either wife or husband is subject to community debts not reduced to liens." (*Mayberry* v. *Whittier, supra,* 144

---

[5]We disagree with Harold's argument that *Weinberg* can be distinguished on the ground that there was no evidence of tax consequences presented in that case (67 Cal.2d at p. 566, fn. 1), while in the instant case, Harold presented the expert testimony of an accountant as to the tax consequences which would result from Harold's receipt of withdrawal payments. Harold relies upon *In re Marriage of Folb* (1975) 53 Cal.App.3d 862 [126 Cal.Rptr. 306]. Responding to an argument that *Weinberg* merely involved a situation where tax consequences could not be ascertained with certainty, the *Folb* court stated in dicta that "[i]t may well be that with the growth of complicated analysis rendered necessary by the equal-division formula mandated in community property litigation, new approaches to property evaluation and division will gain acceptance." (*Id.*, at p. 876.) While thus suggesting that a consideration of tax consequences might be appropriate in valuing community property, the court refused to consider the issue because of the husband's failure to offer proof of the diminution in value by application of the tax laws of community property awarded to him.

The failure of proof in *Weinberg*, however, was the lack of any showing of "*immediate* and *specific* tax liability." (67 Cal.2d at p. 567; italics added.) Regardless of the certainty that tax liability will be incurred if in the future an asset is sold, liquidated or otherwise reduced to cash, the trial court is not required to speculate on or consider such tax consequences in the absence of proof that a taxable event has occurred during the marriage or will occur in connection with the division of the community property. (67 Cal.2d at p. 566.) We disapprove any contrary suggestion in *In re Marriage of Folb*.

Cal. 322, 325; *Frankel* v. *Boyd* (1895) 106 Cal. 608, 615 [39 P. 939]; *Gould* v. *Fuller* (1967) 249 Cal.App.2d 18, 24 [57 Cal.Rptr. 23]; *Harley* v. *Whitmore, supra,* 242 Cal.App.2d 461, 478; *Greene* v. *Wilson, supra,* 208 Cal.App.2d 852, 856 [25 Cal.Rptr. 630]; *Ryan* v. *Souza* (1957) 155 Cal.App.2d 213, 215 [317 P.2d 655]; *Vest* v. *Superior Court* (1956) 140 Cal.App.2d 91, 95 [294 P.2d 988].) While the parties assumed that the partnership would be valued on the basis of a withdrawal value, the fact remains that Harold was *not* withdrawing and no tax liability was incurred during marriage. There is therefore no liability to be charged to Sarane or against her share of the community property. (See *Rosenthal* v. *Rosenthal* (1966) 240 Cal.App.2d 927, 931 [50 Cal.Rptr. 385].) Moreover, since there is no indication in the record that Harold is withdrawing, must withdraw, or intends to withdraw from his firm in order to obtain the cash with which to pay Sarane her share of the community property, there is no equitable reason for allocating to Sarane a portion of the tax liability which may be incurred if and when he does withdraw. (Compare *In re Marriage of Stratton* (1975) 46 Cal.App.3d 173, 175-176 [119 Cal.Rptr. 924], with *In re Marriage of Drivon* (1972) 28 Cal.App.3d 896, 898 [105 Cal.Rptr. 124].) In short, to paraphrase *Weinberg,* although Harold conceivably may do a number of things concerning his law partnership which may create tax consequences, "there is no indication that he must or intends to do" any of them.

We recognize that when community assets are divided in kind the risk of future tax liabilities from the disposition or realization of the assets is apportioned equally, while such risks are not necessarily distributed evenly when the community property is divided according to its value. There will be some compensating distribution of the potential liabilities, however. For example, the award of the family residence to Sarane imposed upon her a burden of a capital gains tax should she choose to sell the house at some future time. Harold, on the other hand, will assume the risk of a tax liability upon his receipt of withdrawal payments. We do not believe that any hypothetical inequity in the distribution of these tax burdens or in disregarding tax consequences in valuing the community assets is adequate justification for introducing an unnecessarily complicated and speculative factor into the process of dividing the community property. The amount of taxes which Harold will incur if he ever withdraws from his firm will depend upon a number of variables, the variety of which makes impossible anything more than a speculative approximation of the potential tax liability. Since these

variables are largely subject to Harold's control, it is appropriate to allocate to him the potential liability.

We reject Harold's contention that potential tax liability is one of those risks of nonrealization of an asset which we directed the courts to consider in valuing nonvested pension rights in *In re Marriage of Brown*, *supra*, 15 Cal.3d 838, 848. We were concerned in that case with "the possibility that death or termination of employment may destroy [pension] rights before they mature." (*Id.*) Both parties obviously should bear the risk that a pension will not vest and contingent community property will not be realized at all. The tax obligations which we consider today are not contingencies to the realization of an asset of the community. They are merely potential debts associated with the use or disposition of an item properly chargeable to the person owning the property at the time the tax obligation is incurred. Since the trial court incorrectly charged these obligations against the community property of the marriage prior to division, that portion of its judgment dividing the community property must be reversed.

We find nothing in the record which impels us to order a new trial. The case was fully tried and there is ample evidence in the record upon which the trial court may base a new valuation of Harold's partnership interest without consideration of tax consequences. A revaluation of Harold's partnership interest may require a readjustment in the division of the community property. The trial court should therefore reexamine its division of the property and make such awards as it deems just and proper. Those portions of the interlocutory judgment of dissolution and of the final judgment from which an appeal was noticed but which appeal was abandoned (see fns. 1 and 3, *ante*) have become final, and neither this court nor the trial court need consider them further. (*Hansen v. Hansen, supra*, 233 Cal.App.2d 575, 581.)

The attempted appeal from the order denying appellant's motion for a new trial is dismissed. Cross-appellant's motion to dismiss appellant's appeal is denied. The interlocutory judgment of dissolution is reversed as to the portion of the judgment appealed from and the cause is remanded with directions to the trial court to set aside those findings of fact and conclusions of law pertinent thereto; to make a new valuation of Harold's interest in his law partnership and a division of the community property in conformity with the views herein expressed; thereafter, having reexamined and redetermined these issues, to make and file

findings of fact based upon the evidence now before it; to make proper conclusions of law therefrom; and to enter judgment accordingly. Appellant shall recover her costs on appeal.

Wright, C. J., McComb, J., Tobriner, J., Mosk, J., Clark, J., and Richardson, J., concurred.