Filed 7/17/23  Marriage of Tomes CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re the Marriage of LISA GAO and WILLIAM J. TOMES. | D080093 |
| LISA GAO TOMES,<br><br>    Appellant,<br><br>    v.<br><br>WILLIAM J. TOMES,<br><br>    Respondent. | (Super. Ct. No. DN180702) |

APPEAL from an order of the Superior Court of San Diego County, Victor M. Torres, Judge.  Appeal dismissed.

Cage & Miles and John T. Sylvester for Appellant.

Niddrie Addams Fuller Singh and Rupa G. Singh for Respondent.

I

INTRODUCTION

William Tomes and Lisa Gao Tomes separated after three years of marriage and a judgment of legal separation was entered requiring William

to pay spousal support to Lisa, make equalizing payments to Lisa, and maintain life insurance for Lisa's benefit.[1]  Years later, a dispute arose regarding William's spousal support obligations.  The parties settled their dispute and agreed to terminate certain of William's duties under the judgment of legal separation, including his spousal support, equalizing payment, and life insurance obligations.  In exchange, the parties agreed William would make $240,000 in equalizing payments to Lisa, including an immediate $75,000 payment and 60 monthly payments of $2,750 each.

After entering into this settlement, Lisa sought to withdraw from it. William moved to enforce the settlement under Code of Civil Procedure section 664.6, and the family court granted the motion.[2]  Thereafter, Lisa filed a motion to set aside the settlement enforcement order as void under section 473, subdivision (d), which the court denied.

Lisa appeals the order denying her set-aside motion.  She claims the settlement enforcement order is void because the family court no longer had jurisdiction over the subject matter of spousal support and, furthermore, the judgment of legal separation prohibited modification of the parties' spousal support obligations.  However, Lisa has waived her right to appeal the order denying her set-aside motion because she has accepted the benefits of that order—specifically, she has accepted the $75,000 equalizing payment and several $2,750 equalizing payments pursuant to the settlement.  Because Lisa has waived her right to appeal, the appeal is dismissed.

---

[1]  We refer to the parties by their first names for the sake of clarity.  No disrespect is intended.

[2]  Further undesignated statutory references are to the Code of Civil Procedure.

2

## II

## BACKGROUND

Lisa and William got married in 2011. In 2014, Lisa filed a petition in the family court seeking a legal separation from William. After a mediation, Lisa and William executed a marital settlement agreement (MSA), which was incorporated into an uncontested judgment of legal separation in 2015.

1. *The MSA*

The MSA is organized into various sections with headings including, "Spousal Support," "Equalization Payment," "Life Insurance," "Reservation of Jurisdiction," and "Other Terms and Conditions," among others.

- *Spousal Support*: Three paragraphs from the spousal support section of the MSA are relevant to the current proceeding.

Paragraph 1 requires William to make base spousal support payments of $3,500 to Lisa each month for 48 months, starting November 1, 2014. It states that William's obligation to make base spousal support payments, "shall only terminate on the death of [Lisa], but not the death of [William]."

Paragraph 2 states, in part, "This agreement regarding spousal support cannot be modified under any circumstances, and no Court shall have the authority to make any changes to [William's] support obligation. It is the express intent of the parties that upon the effective date of this Agreement, the Court shall immediately and forever [be] divested of jurisdiction to extend spousal support payments or jurisdiction for spousal support."

Paragraph 3 requires William to make supplemental spousal support payments to Lisa "in the following amounts: [¶] (a) $15,000 in spousal support on the date [the] agreement is signed by both parties. [¶] (b) $23,000 on November 15, 2017[.] [¶] (c) $23,000 on November 15, 2018[.] [¶] (d) $30,000 on November 15, 2019[,] and every November 15th that follows

3

until November 15, 2030." The MSA states, "[u]nlike the base spousal support payments provided in paragraph 1, the supplemental payments shall cease on the death of [William] or [Lisa]." Further, it provides that Lisa's entitlement to supplemental spousal support terminates if William sells the entirety of his stock ownership in Telgian, Inc. (Telgian), a company he founded.

- *Equalization Payments*: The section pertaining to equalization payments provides that, if Williams sells Telgian stock, Lisa will be deemed the beneficial owner of a percentage of the stock sold. It states that Lisa's beneficial ownership percentage will be calculated based on the monetary value of the stock sold, up to an amount equal to $2,000,000.

- *Life Insurance*: The life insurance section requires William's family trust to maintain $500,000 in life insurance and to designate Lisa as the beneficiary, until the sale of Telgian stock. The size of the life insurance policy may be reduced to specified lower amounts depending on the value of the stock sold.

- *Reservation of Jurisdiction*: The reservation of jurisdiction section states, "There shall be reserved to the San Diego County Superior Court, in the Judgment of Legal Separation anticipated by this Agreement, in addition to the jurisdiction specifically mentioned elsewhere in this Agreement, the jurisdiction to: [¶] (a) Supervise the payment of any obligation ordered paid or allocated in this Agreement. [¶] (b) Supervise the division of assets as agreed in this Agreement. [¶] (c) Supervise the execution of any documents required or reasonably necessary to carry out the terms of this Agreement. [¶] (d) Supervise the overall enforcement of this Agreement. [¶] (e) Resolve any disputes that arise between the parties relative to this agreement."

4

- *Other Terms and Conditions*:  The other terms and conditions section states, in part, "This Agreement may be modified by subsequent agreement of the parties only by an instrument in writing and signed by both of them, an oral agreement to the extent that the parties execute it, or an in-court oral agreement made into an order by a court of competent jurisdiction."

2. *The Settlement Enforcement Proceeding*

Between 2014 and 2018, William made all 48 base spousal support payments of $3,500 to Lisa per the terms of the MSA.  He also made supplemental spousal support payments to Lisa as contemplated by the MSA.  However, he experienced several serious medical ailments starting in 2019, and did not make the $30,000 supplemental spousal support payment that was due on November 15, 2019.

On July 10, 2020, Lisa filed an order to show cause why William should not be held in contempt for the past-due supplemental spousal support.  Soon after, he filed a request to terminate or modify his supplemental spousal support obligations.  He claimed Lisa procured his consent to supplemental spousal support through "emotional blackmail," and his medical ailments constituted changed circumstances warranting modification.  While the parties' competing requests were pending, William did not make the $30,000 supplemental spousal support payment that was due on November 15, 2020.

The court set an evidentiary hearing to address the parties' requests. At the hearing, the parties made opening statements and elicited testimony from witnesses.  However, during the lunch break, they reached a settlement to resolve their dispute.  Lisa's counsel recited the terms of the settlement in open court.

Under the settlement, William agreed to pay Lisa equalizing payments totaling $240,000, including an immediate payment of $75,000 and 60

5

monthly payments of $2,750 each. In exchange, Lisa agreed there would be no supplemental spousal support arrears and the parties' rights and obligations relating to supplemental spousal support, equalization payments, and life insurance would be terminated. Lisa and William both testified they understood and agreed to be bound by the settlement.

After the hearing, William's counsel prepared a written proposed stipulation and order memorializing the settlement, but Lisa declined to sign it in an apparent case of buyer's remorse. Therefore, William moved to enforce the settlement under section 664.6.[3] Lisa opposed the motion, arguing the "immensely unfair" settlement should not be enforced because she accepted it when she was operating "under the pressure of the trial" and while she was taking a prescription medication. The court granted William's motion and adopted his proposed stipulation and order memorializing the settlement.

Thereafter, William began to make equalizing payments to Lisa under the terms of the negotiated settlement. He paid her the $75,000 payment on September 3, 2021, and started making the $2,750 monthly payments beginning September 15, 2021. Lisa accepted and retained these payments.[4]

---

[3]    Section 664.6, subdivision (a), states in pertinent part, "If parties to pending litigation stipulate, in a writing signed by the parties outside of the presence of the court or orally before the court, for settlement of the case, or part thereof, the court, upon motion, may enter judgment pursuant to the terms of the settlement."

[4]    Technically, William sent Lisa a cashier's check for $69,168, not $75,000. That is because, as we will soon discuss, the family court imposed nearly $6,000 in sanctions on Lisa. The amount of the cashier's check reflects the $75,000 payment, less the amount Lisa was ordered to pay in sanctions. For sake of clarity, we will refer to the payment as a $75,000 payment.

3. *The Set-Aside Proceedings*

Meanwhile, Lisa filed two successive motions to set aside the family court order enforcing the parties' settlement.

First, she moved to set aside the settlement enforcement order under section 473, subdivision (b), on grounds that the order was taken against her through her mistake, inadvertence, or excusable neglect. She again argued she was "impaired" and "inebriated" during the evidentiary hearing, and lacked the mental capacity to consent to the settlement, because of the prescription medication she was taking at the time of the hearing. After receiving briefing from both parties, the court denied Lisa's set-aside motion. The court also ordered Lisa to pay William nearly $6,000 in monetary sanctions under Family Code section 271 for promoting litigation and frustrating settlement.

Second, Lisa moved to set aside the order as void under section 473, subdivision (d). She claimed the order was void because the MSA (and the judgment of legal separation incorporating the MSA) prohibited modification of its spousal support provisions and divested the court of jurisdiction over spousal support. In support of this argument, Lisa relied on paragraph 2 of the MSA's spousal support section, which, as noted, states, "This agreement regarding spousal support cannot be modified under any circumstances, and no Court shall have the authority to make any changes to [William's] support obligation. It is the express intent of the parties that upon the effective date of this Agreement, the Court shall immediately and forever [be] divested of jurisdiction to extend spousal support payments or jurisdiction for spousal support."

William opposed Lisa's motion to set aside the settlement enforcement order. He argued the court had jurisdiction to modify the judgment of

7

separation (including its spousal support provisions) under the MSA provision reserving the jurisdiction of the court to "[s]upervise the overall enforcement of [the] [a]greement" and "[r]esolve any disputes that arise between the parties relative to [the] agreement." He asserted the parties' spousal support obligations were subject to modification under the MSA provision stating, "This Agreement may be modified by subsequent agreement of the parties only by ... an in-court oral agreement made into an order by a court of competent jurisdiction." Further, he argued that, to the extent the family court exceeded its jurisdiction, its order was merely voidable and thus not subject to a set-aside under section 473, subdivision (d).

On January 10, 2022, in an unsigned minute order, the court denied Lisa's motion to set aside the order enforcing the negotiated settlement. It found it had jurisdiction over spousal support; even if it did not have jurisdiction, the order was merely voidable, not void; and the parties' spousal support obligations were modifiable. The court ordered William to prepare a proposed statement of decision memorializing the order. As instructed, William filed a proposed statement of decision memorializing the unsigned minute order. Thereafter, Lisa submitted objections to the proposed statement of decision.

On March 3, 2022, Lisa appealed the denial of her set-aside motion.

On March 17, 2022, the court signed and adopted William's proposed statement of decision without substantive modification.

On June 17, 2022, the court issued an amended statement of decision denying Lisa's set-aside motion.[5]

---

[5]  The court issued the amended statement of decision to respond to Lisa's objections and clarify that the court-adopted statement of decision was final, not proposed.

# DISCUSSION

Lisa appeals the denial of her motion to set aside the settlement enforcement order, claiming it is void because the family court did not have jurisdiction over the subject matter of spousal support and the judgment of legal separation prohibited modification of the parties' spousal support obligations. As he did in the proceedings below, William argues the court had jurisdiction over spousal support; the settlement order was voidable at most, not void; and the judgment of legal separation did not prohibit the parties from modifying their spousal support obligations.

We do not reach the merits of these arguments because Lisa—despite challenging the denial of her motion to set aside the settlement enforcement order—has simultaneously accepted the benefits of that order. In particular, she has received and retained an immediate equalizing payment of $75,000 and several monthly equalizing payments of $2,750 from William, which she has not placed in trust or returned to William. Because Lisa has retained these payments, she has waived her right to appeal the denial of her motion to vacate the settlement enforcement order, and her appeal is dismissed.

1. *The Court Has Appellate Jurisdiction Over the Denial of Lisa's Motion*

At the outset, we must first consider the appealability of the denial of Lisa's motion to set aside the order enforcing the parties' settlement agreement. (See *Estate of Sapp* (2019) 36 Cal.App.5th 86, 98 ["Because appealability goes to the question of this court's jurisdiction, we must address that threshold question before addressing the merits of [the] appeal."].)

As a general matter, "[a]n order denying a statutory motion to vacate under [Code of Civil Procedure] section 473 is appealable." (*Shisler v. Sanfer Sports Cars, Inc.* (2008) 167 Cal.App.4th 1, 5.) Here, the family court issued

its minute order denying Lisa's set-aside motion on January 10, 2022, and she timely filed her notice of appeal from that denial on March 3, 2022, which would seem to suggest the appeal is properly taken from the minute order.

However, the minute order is unsigned and it instructs William to prepare a statement of decision. An unsigned minute order cannot form the basis of an appeal where it instructs the preparation of a formal order. (See *In re Marriage of Lechowick* (1998) 65 Cal.App.4th 1406, 1410.) Under this rule of appealability, the unsigned minute order denying Lisa's motion to set aside the settlement enforcement order is arguably nonappealable.

But we need not decide whether the unsigned minute order is itself appealable because, as Lisa and William both agree, Lisa properly appealed from the amended statement of decision issued on June 17, 2022. "Although '[t]he general rule is that a statement or memorandum of decision is not appealable,' a reviewing court has discretion to treat a statement of decision as an appealable order when it 'is signed and filed and does, in fact, constitute the court's final decision on the merits.' " (*Marshall v. Webster* (2020) 54 Cal.App.5th 275, 280; see *Hernandez v. Rancho Santiago Community College Dist.* (2018) 22 Cal.App.5th 1187, 1192 [" ' "Reviewing courts have discretion to treat statements of decision as appealable" ' "].)

Here, the amended statement of decision was signed, it was filed, and it finally resolved Lisa's motion on the merits. Further, while Lisa filed her notice of appeal prior to the issuance of the amended statement of decision, "we have discretion to treat it 'as filed immediately after entry of' the order, which would be timely." (*In re Marriage of Ankola* (2020) 53 Cal.App.5th 369, 375, quoting Cal. Rules of Court, rule 8.104(d)(2).) "In exercising our discretion, we liberally construe a premature notice of appeal in favor of its sufficiency." (*Ankola,* at p. 375.) We exercise our discretion and construe the

10

premature notice of appeal as filed immediately after the amended statement of decision.  Thus, Lisa's appeal is timely and taken from an appealable order.

2. *Lisa Waived Her Right to Appeal the Denial of Her Set-Aside Motion*

We must consider another preliminary issue bearing on whether the appeal is properly before us.  In his appellate brief, William argues Lisa has waived her right to appeal the denial of her motion to set aside the settlement enforcement order by accepting the benefits of that order— specifically, by accepting the initial $75,000 equalizing payment and the $2,750 monthly equalizing payments he sent her.  Lisa does not dispute that she has accepted these benefits, but argues the appeal should nonetheless proceed because she is entitled to at least as much money as she has accepted, regardless of the outcome of the appeal, and she is simply appealing to obtain an even larger recovery under the original judgment of legal separation.  We agree with William.

As a general rule, a party's voluntary acceptance of the benefit of a judgment or order bars that party from pursuing an appeal from the judgment or order.  (*Lee v. Brown* (1976) 18 Cal.3d 110, 114; *Schubert v. Reich* (1950) 36 Cal.2d 298, 299.)  The rationale for this rule is that the right to accept the fruits of the judgment or order and the right to appeal from that judgment or order are wholly inconsistent, and an election to take one course is a renunciation of the other.  (*Mathys v. Turner* (1956) 46 Cal.2d 364, 365; *Satchmed Plaza Owners Assn. v. UWMC Hospital Corp.* (2008) 167 Cal.App.4th 1034, 1041.)  A party's acceptance of the benefits of a judgment or order implicitly affirms the validity of the judgment or order, and thus constitutes a waiver of the right to appeal from the judgment or order.  (*Lee*, at p. 114.)  Under this general rule, a court will find a waiver of an appeal

11

even "where the benefits accepted are small as compared with those at stake under the remainder of the judgment." (*Schubert*, at p. 300; see *Satchmed*, at p. 1042 [" 'acceptance of even a part of the benefit of a judgment or order will ordinarily preclude an appeal from the portion remaining' "].)

There are exceptions to this general rule. One such exception applies when "an appellant is concededly entitled to the benefits which are accepted and a reversal [of the order or judgment] will not affect the right to those benefits. [Citations.] This exception is most amenable to application in circumstances involving different items of property [citations], or where portions of the [order or] judgment appealed from are conceptually severable from those portions accepted." (*Trollope v. Jeffries* (1976) 55 Cal.App.3d 816, 825.) "Thus, '[i]f the appeal is only from a portion of a[n order or] judgment in which the issues are severable, the portions from which no appeal is taken may become final and beyond the scope of review of the appellate court [citations]; and so where the [order or] judgment clearly establishes the appellant's right to recover but the amount is less than he demands, he may accept it and nevertheless appeal, claiming the larger recovery.' " (*In re Marriage of Fonstein* (1976) 17 Cal.3d 738, 744 (*Fonstein*).)

Lisa argues this exception applies because she would be entitled to receive at least $240,000—the combined amount of the equalizing payments provided for in the negotiated settlement—if she were to prevail on appeal and secure a reversal of the order denying her set-aside motion.[6] According to Lisa, she has not affirmed the validity of the negotiated settlement merely by accepting the equalizing payments under the settlement, since the

---

[6] Lisa estimates she would be entitled to receive "close to $2.5 million" if she were to obtain a reversal of the order denying her motion to set aside the settlement enforcement order.

combined total of those equalizing payments is equal to, or less than, the combined amount of supplemental spousal support and other property she would receive if she were to prevail in this appeal and obtain reinstatement of the original judgment of legal separation. In making this argument, Lisa analogizes the present case to *Fonstein, supra*, 17 Cal.3d at page 738.

In *Fonstein*, an interlocutory judgment of marital dissolution divided a couple's community property and ordered the husband to pay spousal and child support to the wife. (*Fonstein, supra*, 17 Cal.3d at p. 742.) It awarded the husband a larger share of the community property, which included the husband's interest in his law partnership, but ordered him to pay the wife one-half the difference between his larger share and her smaller share. (*Id.* at pp. 742–743.) The wife appealed the judgment and challenged the trial court's valuation of the husband's interest in his law partnership, which she claimed was too low. (*Id.* at p. 742.) The husband moved to dismiss the wife's appeal based on her receipt of the benefits of the judgment—i.e., her receipt of spousal and child support, as well as her receipt of 400 shares of stock constituting community property. (*Id.* at pp. 744–745.) But the Supreme Court denied the motion to dismiss. (*Id.* at p. 745.) It reasoned the spousal and child support payments were "severable from the portion of the judgment ... dividing the community property," which was the only portion of the judgment the wife challenged on appeal. (*Ibid.*) Further, the Court determined the wife's receipt of the community property stock did not bar her appeal because, if she were to prevail in her appeal, she indisputably "would be entitled to community property having a value greater than the value of the stock which she has received." (*Ibid.*)

This case is distinguishable from *Fonstein*. Unlike the wife in *Fonstein*, who appealed an interlocutory judgment of marital dissolution in order to

challenge a severable portion of the same interlocutory judgment, Lisa contests the denial of her set-aside motion—and by proxy the settlement enforcement order—in its entirety. Her right to collect anything under the settlement enforcement order turns on whether she succeeds in her appeal. If she prevails in this appeal, and reverses the denial of her set-aside motion, she will receive nothing under the settlement enforcement order. Thus, the appeal is not taken "from a portion of [an order] in which the issues are severable," such that some unchallenged piece of the order may be considered final and beyond the scope of review. (*Fonstein, supra*, 17 Cal.3d at p. 744.)

It is certainly possible—if not likely—that, in the event of a reversal, Lisa could receive equalizing payments equivalent to, or greater than, the $240,000 in equalizing payments she is scheduled to receive under the settlement enforcement order. If Lisa were to obtain a reversal of the order denying her set-aside motion, the original judgment of legal separation would appear to govern. And, as discussed, the judgment of legal separation grants Lisa equalizing payments in the form of a beneficial ownership interest in Telgian stock. But, critically, Lisa would be entitled to receive this beneficial interest only conditionally—*if*, and only *if*, Williams sells Telgian stock. If he does not sell Telgian stock, she would be entitled to *no* equalizing payments.

Under the judgment of legal separation, Lisa also would be entitled to receive annual supplemental spousal support payments of $30,000, which—if paid every year—would surpass $240,000. But these supplemental spousal support payments are conditional as well. Supplemental spousal support would be payable only until Lisa or William passes away; thus, it is payable *if*, and only *if*, both William and Lisa remain alive. Further, Lisa's entitlement to supplemental spousal support under the judgment of legal separation is subject to a second condition. It is payable to Lisa *if*, and only

14

*if*, William does not sell the entirety of his Telgian stock. Given the existence of these conditions, it is not at all clear to us that Lisa's rights to supplemental spousal support and equalizing payments under the judgment of legal separation would necessarily exceed the $240,000 in equalizing payments to which she is entitled under the settlement.

In any event, separate and apart from these considerations, Lisa has received an independent benefit under the settlement she seeks to overturn in this appeal—the right to *expeditiously* access, and use, the equalizing payments she has accepted. Under the judgment of legal separation, Lisa would be entitled to receive payments of $30,000 just once per year while she and William both remain alive, and her entitlement to other property would depend on future contingencies as well, such as William's sale of Telgian stock. However, under the settlement enforcement order, Lisa received an *immediate* equalizing payment of $75,000, as well as several monthly equalizing payments of $2,750, which will continue for 60 months.[7] Under the parties' negotiated settlement, Lisa has had access to, and use of, these equalizing payments throughout the appeals process. By retaining these equalizing payments, which Lisa has received far sooner and with greater certainty than the supplemental spousal support and equalizing payments to which she might have been entitled under the original judgment of legal separation, Lisa has accepted the fruits of the settlement enforcement order.

In this regard, the present case is similar to *Epstein v. DeDomenico* (1990) 224 Cal.App.3d 1243 (*Epstein*). In that case, the Epsteins bought an apartment building from DeDomenico, became unhappy with the purchase,

___

[7]    Under this payment schedule, Lisa will have received the entirety of her $240,000 in equalizing payments no later than five years from the commencement of the monthly equalizing payments.

and sued DeDomenico. (*Id.* at p. 1245.) DeDomenico initiated foreclosure proceedings on the property, but the Epsteins obtained an injunction prohibiting the foreclosure and paid a $75,000 cash bond as security. (*Ibid.*) The parties settled the case and the Epsteins recovered their cash bond under the settlement. (*Ibid.*) However, the Epsteins later tried to withdraw from the settlement, which prompted DeDomenico to seek enforcement of the settlement under section 664.6. (*Ibid.*) The court granted the settlement enforcement motion and the Epsteins appealed the ensuing judgment, claiming they were coerced into accepting the settlement. (*Id.* at p. 1246.)

On appeal, the Court of Appeal concluded the Epsteins waived their right to appeal the judgment by accepting the return of their $75,000 cash bond. (*Epstein, supra*, 224 Cal.App.3d at p. 1246.) The court reasoned the Epsteins accepted a substantial benefit from the negotiated settlement because they *immediately* recovered, and had use of, their bond due to the settlement. (*Id.* at p. 1247 ["the Epsteins have received a considerable financial benefit, in that they recovered their deposit in 1989 and have had the use of it since then"].) Further, in the event of a reversal, the Epsteins would need to redeposit the bond or take equivalent steps to prevent execution on the property. (*Ibid.*) The court acknowledged the Epsteins "theoretically were entitled to the return of the deposit if they succeeded in their action against DeDomenico," but found this fact to be "of no importance" because the Epsteins "were able to recover the deposit *when they did* only by virtue of the judicially enforced settlement." (*Ibid.*, italics added.)

Additionally, the *Epstein* court "observe[d] that *any* settlement of disputed claims involves many compromises and concessions which may not appear interdependent to those who did not participate in the discussion, but may have controlled the decision of the parties to accept other apparently

16

unrelated terms of the agreement." (*Epstein, supra*, 224 Cal.App.3d at p. 1247, italics added.) For that reason, the court stated it "would be reluctant to find that *any* term of a negotiated settlement was severable from the rest absent a clear showing of independence." (*Ibid.*, italics added.)

Just as the Epsteins realized a substantial benefit under their negotiated settlement, Lisa has accepted a considerable benefit under the bargained-for settlement she challenges through this appeal. She has received a prompt and definite equalizing payment of $75,000, and several equalizing payments of $2,750 each month. It is of no importance that, under the judgment of legal separation, she might have received equal or larger sums of money and property at some point in the future upon the occurrence or non-occurrence of specified contingencies. She has received fixed equalizing payments now, and has had use of them throughout the appeals process, solely because of the settlement. By accepting the prompt and definite equalizing payments from William under the negotiated settlement, Lisa has affirmed the validity of the family court's denial of her set-aside motion, and waived her ability to appeal the denial order.

IV

DISPOSITION

The appeal is dismissed. Respondent William J. Tomes is entitled to his costs on appeal.

McCONNELL, P. J.

WE CONCUR:


O'ROURKE, J.


IRION, J.